RICHARD H. SHIRES, Respondent, v. FONDA, JOHNSTOWN AND GLOV-
ERSVILLE RAILROAD COMPANY, Appellant.

*Negligence — duty of a person approaching a railroad crossing — what is not·a dan-
gerous rate of speed for a train.*

It is the duty of a person approaching a railroad crossing, in order to relieve him-
self from the imputation of negligence, to look in both directions for approach-
ing trains.

A train on a steam railroad moving, at the time of an accident at a highway
crossing, at the rate of from eight to ten miles an hour, and giving the usual
warnings of its approach, is not running at an unusual or dangerous rate of
speed.

APPEAL by the defendant, the Fonda, Johnstown and Glovers-
ville Railroad Company, from a judgment of the Supreme Court in
favor of the plaintiff, entered in the office of the clerk of the county
of Montgomery on the 25th day of September, 1893, upon the ver-
·dict of a jury, rendered after a trial at the Montgomery Circuit, and
also from an order entered in said clerk's office on the 25th day of
September, 1893, denying the defendant's motion for a new trial
made upon the minutes, with notice of an intention to bring up for
review on such appeal said judgment and order, together with the
·exceptions taken on the trial, the denial of the defendant's motion
for a nonsuit and the charge as made to the jury.

*A. D. L. Baker*, for the appellant.

*R. B. Fish*, for the respondent.

MAYHAM, P. J.:

Two questions only seem to be presented for our consideration on
this·appeal:

*First.* Was the defendant negligent in running its trains at too
high a rate of speed in crossing this highway, without suitable sig-
nals and warnings of its approach?

*Second.* Was the plaintiff guilty of contributory negligence, or
rather did the evidence show that he was free from contributory
negligence, in driving his horse and wagon on to this railroad track
at the time of the collision and injury?

The track of the defendant's railroad starts from the depot at Fonda and runs in a westerly direction nearly parallel with Main street in that village, about 1,000 feet, where it crosses the Cayudetta creek, and there commences to curve to the north on an ascending grade of forty-two feet to the mile, and at a distance of 200 feet from the creek crosses that street at an acute angle with the same.

Northerly of the railroad bridge over this creek, and at a distance of 135 feet therefrom, Main street crosses the creek and continues in a westerly course 128 feet to where it is crossed by the railroad track. At this junction of the railroad and street the carriage of the plaintiff collided with an engine of the defendant, and the injury of which the plaintiff complains was inflicted.

The accident occurred about seven P. M. on the tenth of May. The train started from Fonda and was moving up the track towards Johnstown at a moderate rate of speed, and as the same passed over the railroad bridge 200 feet from the junction, the plaintiff drove over the wagon bridge in the direction of the junction and 128 feet therefrom. Between the turnpike or street on which the plaintiff was driving and the railroad track there appears to have been three intervening obstructions to vision, one a house twenty-two feet wide, and two elm trees. With the exception of these obstructions the railroad track was visible from the street on which the plaintiff was driving all the distance from the highway bridge to the railroad crossing. The undisputed evidence shows that from a point on the highway or street on which plaintiff was driving, forty-five feet from the track, the view of the track from the crossing to the railroad bridge, a distance of 200 feet, was entirely unobstructed. The train was moving at the rate of from eight to ten miles per hour, and seven witnesses swear that the whistle of the locomotive was sounded and bell rung as the train approached this crossing. The plaintiff, his wife and a lady riding with them, each swear that they did not hear these signals.

Upon these facts, we think that the plaintiff failed to make a case of negligence on the part of the defendant. It does not appear that the defendant's train, at the time of the accident, was running at an unusual or dangerous rate of speed; and the evidence that the usual signals and warnings were given on the train on approaching this

crossing seem overwhelming. That evidence is of a positive and affirmative character, and testified to by seven witnesses, some of whom do not appear to be in any way connected with the defendant; and as to those who are shown to be the employees of the defendant there is no greater presumption of bias attached to their testimony, on the ground of interest, than would attach to the testimony of the plaintiff and the two ladies riding in the carriage with him.

The burden is upon the plaintiff, who charges negligence upon the defendant, to establish the truth of his charge. In this he seems, upon the evidence, to have failed; and if the appellate court ought ever to reverse, where there is some evidence in support of a verdict, but a clear and decided preponderance of evidence against it, this is such a case.

But even if there were sufficient evidence of negligence on the part of the defendant to uphold the verdict, we think that the evidence wholly fails to establish the plaintiff's freedom from contributory negligence.

As we have seen, the plaintiff was in plain view of this track for most of the distance from the railroad and wagon bridges to the crossing at which the accident occurred, and was familiar with the location of the highway and railroad track. The evidence shows that if on approaching the railroad track he had looked, he could and must have seen the approaching train. Had he done so, he could without difficulty have avoided collision by turning to the right into the public road on the east side of the Lisner House, or, if he had passed that house, by turning into the road to the coal house between the Lisner House and the railroad sign, either of which presented a safe and accessible way of escape.

It is true the plaintiff testifies that he was looking to the north, and did not observe the approaching train on the south, but, as trains were liable to approach from either direction, he was required, in order to relieve himself from the imputation of negligence, to look in both directions. (*Cullen* v. *Pres.*, etc., *of D. & H. C. Co.*, 113 N. Y. 667; *Crandall* v. *Lehigh Valley R. R. Co.*, 72 Hun, 431.)

We think the learned trial judge erred in refusing to nonsuit the plaintiff on the motion of the defendant at the close of the tes-

timony and in refusing to set aside the verdict and grant a new trial on defendant's motion upon the minutes.

Judgment reversed and a new trial granted, costs to abide event.