# THIRD DEPARTMENT

AT

# GENERAL TERM,

## December, 1895.*

91    1<br>
158a 597

CHARLES H. JUDSON, Respondent, v. THE CENTRAL VERMONT RAIL-
ROAD COMPANY, Appellant.

*Contributory negligence — duty of one approaching a railroad crossing at night —
noise of his wagon.*

The duty of a person who approaches a dangerous railroad crossing is not per-
formed simply by looking each way when he is approaching the crossing upon
a dark night; he must bring into requisition all the faculties with which he is
endowed for the purpose of protecting himself from injury; he must listen as
well as look, and his failure to listen, or the production by him of a condition,
like the rattling of a wagon which he is driving, which prevents him from
hearing the approach of a train, amounts to contributory negligence.

In an action brought to recover damages for injuries sustained by reason of the
alleged negligence of the defendant, it appeared that the plaintiff was driving
at night a lumber wagon which made considerable noise; that he was
proceeding at the rate of four or five miles an hour from the south upon a
street, the principal thoroughfare in a country village, which ran north and
south, and which was crossed by a railroad which ran east and west; that he,
could not see east and west of the crossing until he had come within about
forty feet of the crossing; that east of the street the defendant was making up
a train, the backing down of which in a westerly direction caused the accident;
that at this time there was, west of the street, an engine having its head light
lit, which threw a strong light over the crossing and that the plaintiff was
seated upon the lumber wagon sidewise, with his face towards the west, his
back being towards the train in question.

The plaintiff testified that, upon arriving at the point where he could do so, he
looked east and west, saw upon the west the engine with its head light and,

---

* The other cases of this term will be found in volume 90 Hun.— [REP.

upon the east, lights which he supposed to be lanterns on cars east of the cross-
ing, but that he estimated that the cars were some distance from him; that he
heard no train moving and saw no train which he supposed to be in motion;
that he did not slacken the speed of his team, but continued on a trot.

The evidence of the defendant was that there was a brakeman upon the rear end
of the train, on which there were also two other brakemen; that the rear
brakeman displayed a lantern; that three blasts of the whistle were blown, and
that the bell was kept ringing constantly. The rear brakeman also testified
that he saw the plaintiff approach the track; that the brakeman halloaed several
times, signaled the engineer to stop the train, and that it was stopped as soon as
possible after the accident. The speed of the train was estimated by the plain-
tiff's witnesses at from ten to twelve miles an hour, and upon the part of the
defendant at four miles an hour.

*Held,* that the plaintiff was guilty of contributory negligence and should have
been nonsuited.

APPEAL by the defendant, The Central Vermont Railroad Com-
pany, from a judgment of the Supreme Court in favor of the plain-
tiff, entered in the office of the clerk of the county of St. Lawrence
on the 1st day of February, 1895, upon the verdict of a jury ren-
dered after a trial at the St. Lawrence Circuit, and also from an
order entered in said clerk's office on the 1st day of February, 1895,
denying the defendant's motion for a new trial made upon the
minutes.

The judgment was for $2,000 in an action for personal injuries
alleged to have been sustained by the plaintiff by reason of the
alleged negligence of the defendant.

*Louis Hasbrouck,* for the appellant.

*N. M. Claflin* and *C. A. Kellogg,* for the respondent.

MAYHAM, P. J.:

The case discloses that on the 2d of November, 1893, at about
half-past six o'clock, the plaintiff, while driving a team hitched to a
heavy lumber wagon, on Main street, in the village of Norwood,
across the track of the defendant's railroad, which, at that point,
crosses Main street at right angles, was hit by the rear end of a
freight car attached to a freight train, and which was being backed
across the street, and thrown from his wagon and injured.

The railroad track at this point seems to constitute a part of the
defendant's railroad yard for making up trains of cars to be for-

warded over its track, and also over the track of the Rome, Watertown and Ogdensburgh railroad, the junction of which two roads is at, or near, the village of Norwood. The track of the defendant's railroad at this point was substantially a straight line, as is also Main street, in the village of Norwood, which crosses the railroad at that point.

The plaintiff approached the railroad track on Main street from the south, and at the point of approach the view of the railroad on either side of Main street was obstructed by buildings until within about forty feet of the track, from which point the railroad track was in plain view for a long distance on either side of Main street. The plaintiff approached the railroad, and, at the time of his approach, there was an engine standing upon the track, about 150 feet west of the street, with its headlight shining easterly, throwing its reflection of light over and across Main street at that point. The train, the rear car of which collided with the plaintiff's wagon, was backing in a westerly direction from the railroad station, which is located east of Main street, and consisted of several freight cars attached to an engine, being backed across Main street to a point westerly therefrom for the purpose of being hitched or attached to other freight cars to make up a train.

The plaintiff was seated on planks resting upon the bolsters of his wagon, there being no box upon the wagon, and was facing west as he approached the railroad, with his feet hanging off of the platform on which he was seated. The wagon on which he was riding made considerable noise, and his team was traveling on a trot at the rate, as estimated by the witnesses, of from four to five miles an hour. Before emerging from the buildings on either side of Main street, he heard the whistle of a locomotive, and, on arriving at the point where he could look in an easterly and westerly direction, he testified that he looked both ways; saw the engine with its headlight pointed toward him, and saw lights, which he supposed to be lanterns on cars on the easterly side of the crossing, but estimated that they were some distance from the crossing. He swears he heard no train moving and saw no train which he supposed was in motion on either side of the crossing, but he did not slow his team or stop, but continued his team on a trot, attempting to cross the track; when at near the point of collision he saw a

freight train moving from the east toward the west, from which he could not escape, and by collision with the rear car of which the injury complained of was inflicted.

The evidence and situation discloses that his back was toward the freight train, and that his only view of the track in the direction from which the freight train approached was by turning his head and looking backward down the track. He says he saw no light on the rear car of the freight train at the time of collision and heard no outcry from any one on that train.

One or two witnesses offered by the plaintiff also testified that at the time of the collision they saw no lantern or light on the rear car of the freight train and heard no outcry. The plaintiff testifies that he was very familiar with this crossing, and had been for thirty years.

This is substantially the evidence offered by the plaintiff in support of his action. Some of the witnesses for the plaintiff estimated the speed at which the train was being backed down at from ten to twelve miles an hour.

On the part of the defendant the evidence of the engineer and other employees discloses that the rate of speed at which the train was moving at the time of the collision did not exceed four miles an hour. The defendant's evidence also discloses that the freight train by which the plaintiff was injured consisted of several cars, on which were located three brakemen at different points with lanterns, one near the engine, one in the middle of the train and another on the rear car of the train, that being the car by which the plaintiff was hit; that on starting to move the train across the street for the purpose of attaching it to other cars then in defendant's yard, the signal used at that point for crossing the street was blown, it being three blasts from the locomotive whistle; that the bell on the engine was constantly kept ringing from the time the train commenced backing until the happening of the collision, and the brakeman on the rear car testified that the lantern was constantly displayed by him on the rear end of that car, until the time of the collision, when it was put out by the concussion, and that as he approached the crossing he saw plaintiff approaching the track, and halloaed several times, at the same time signaling the engineer to stop the train, and the engineer testifies that he stopped the train as soon as possible after being signaled to do so.

From these facts, which constitute substantially the facts proved, two questions are presented for consideration :

*First.* Did the evidence disclose any negligence on the part of the defendant which caused the injury complained of ?

*Second.* Did the plaintiff, by his proof, establish his freedom from contributory negligence ?

Upon the question of defendant's negligence there seems to be such a conflict in the evidence offered by the plaintiff and defendant as properly to present a question of fact for the jury, as to whether or not the defendant was guilty of negligence.

The case discloses that the crossing at which this accident occurred was the principal thoroughfare in an active country village, and while the defendant, by its charter and under the laws of the State, was fully authorized to operate its railroad at that point, it is apparent that, in the use of the powerful and somewhat dangerous appliances and machinery necessarily used in its operation, the defendant was charged with a high degree of care in promoting the safety of the public, who had also a right to pass over and across its track, and if it failed in the performance of that high and responsible duty, to the injury of a person properly crossing the track, it was doubtless liable for such injury.

The conflict in the evidence as to the rate of speed at which the train was moving, and as to whether or not there was any danger signal, either by lanterns or any other appliance, on the rear car as it approached this crossing, to warn travelers upon the highway of its approach, were disputed questions of fact upon which the jury might have found in support of the plaintiff's theory, and thus have reached a conclusion that the defendant was guilty of negligence which produced or contributed to this injury. And if the case stood upon that question alone we do not see how the verdict of the jury and the judgment thereon could be disturbed on appeal. But in this class of cases, as has been repeatedly held, the plaintiff does not establish his right to a recovery upon the proof of the defendant's negligence alone. He must go further and prove himself free from negligence, and that he in no way contributed by his own negligence to the injury complained of.

In this, we think, that within the decisions in this class of cases in this State, the plaintiff failed in his proof. He acted with the full

knowledge of the manner in which this railroad was operated at this point, and was charged with more than an ordinary degree of care in approaching and crossing this track, to avoid serious and fatal consequences to himself as well as injury and hazard to the railroad company running over this track.   He knew the railroad company had rights, in some respects, as was said by the learned trial judge, superior to his own.   It was confined to the limits of the steel rails that cross the public highway, and could not exercise that absolute control over its machinery and cars, as could one approaching its track, either on foot or with a team.   It was, therefore, his duty, on approaching this track, with a knowledge of the fact just stated, to do everything in his power to avoid a collision.   On approaching the track, he was required to look and to listen, and if prevented from listening by the noise of the vehicle in which he was riding, and listening could have averted the injury, it was his duty to stop, as he could, his team, and assure himself as well as he might, both by looking and listening, that there was no danger in crossing.

This, it seems to us, he failed to do, and, failing in that, he was guilty of a negligent omission which produced this injury.

It can hardly be pretended that had he stopped on approaching this railroad track, or on passing the line of vision on either side of the highway as he approached the railroad track, he would not only have seen the lights stationed on the different cars, but would have necessarily heard the rumble of the cars in time to have averted the collision.   Failing to do this, it seems to us that he failed in the high duty which he owed to himself for the preservation of his own life and property.

It is quite true that a rule has been established that where, upon the question of contributory negligence, there is such a reasonable doubt as that different minds looking at the same circumstances might reach different conclusions as to the negligence, or absence of negligence of the party, the question should be submitted to the jury.   But it can hardly be conceived that minds would differ upon the question as to whether, or not, the plaintiff would have heard these cars had he stopped his team and silenced the rattling of his own vehicle, and, that being so, this case does not come within the rule above suggested.

In *Bates* v. *The N. Y. C. & H. R. R. R. Co.* (84 Hun, 287) the

facts disclosed were somewhat similar to the case at bar. The plaintiff's intestate was driving a team drawing a wagon loaded with ice. He was walking at the time at the side of the wagon with the lines in one hand and his other hand resting upon the box. As he approached the track, he looked both ways and continued to drive on. When he was upon the track, which was single at that place, an engine with a pay car attached, struck the deceased, inflicting an injury from which he died.

Upon this proof the trial court dismissed the complaint, holding that the plaintiff's intestate was guilty of contributory negligence.

DYKMAN, J., in delivering the opinion of the General Term, which affirmed the decision of the trial judge, uses this language : " The deceased was walking, and thus had entire control of his own movements. He could stop and recede instantaneously at his volition. One of the witnesses for the plaintiff testified hat she saw him first when his horses' front feet were just stepping upon the track. Of course, he was then about ten feet from the track. The witness  *  *  *  waved a towel at the deceased, and said ' Keep back,' but she could not attract his attention," and the court adds : " It is impossible, in view of that testimony and other facts and circumstances, to escape the conclusion that the deceased went heedlessly upon the track, and brought the calamity upon himself."

In *Fowler* v. *The N. Y. C. & H. R. R. R. Co.* (74 Hun, 144), HERRICK, J., in discussing the question of contributory negligence, uses this language : " When a person approaches a point of danger it is his duty to do so with care and caution commensurate with the dangers of the locality. The duty of looking and listening when one approaches a crossing of many tracks does not seem to me to be adequately discharged by merely looking as the dangerous point is approached, and then, when it is absolutely reached, going blindly forward."

And the learned judge, after discussing other features of the case, somewhat similar to the case at bar, reaches the conclusion that the plaintiff's intestate had not shown himself free from contributory negligence.

In *Shires* v. *The Fonda, Johnstown & Gloversville Railroad Co.* (80 Hun, 92) the court says : " The evidence shows that if, on approaching the railroad track, he (the plaintiff) had looked he could

and must have seen the approaching train. Had he done so, he could, without difficulty, have avoided collision," and the court held that his failure to do so was contributory negligence, which prevented him from recovery.

In *Albert* v. *N. Y. C. & H. R. R. R. Co.* (80 Hun, 155), HERRICK, J., in discussing the question of contributory negligence, says : "It has been held in the case of travelers along a highway approaching a railroad crossing, that it is their duty to look and listen — to look both ways for approaching danger; that if they fail to look, it is negligence on their part, and that if by looking they could see the approaching danger in time to avoid it, and still go on, they are negligent, either in not having looked, for in looking they must have seen the danger, or, having looked, in still going on ; that the duty they owe to themselves and to the railroad company, in such a case, in approaching points of danger, is one of active vigilance."

It will be seen from these cases that the duty of a person in approaching a dangerous crossing is not performed, even by looking each way, especially if, as in the case at bar, he attempts to cross on a dark night. He must bring into requisition all the faculties with which he is endowed to protect himself against injury. He must listen as well as look, and his failure to do that, or his producing a condition, such as the rattling of his wagon, which prevents him from hearing the approaching train, is such an act of negligence as, we think, brings him within the rule of the adjudged cases.

Under these circumstances, we think the learned judge erred in refusing to nonsuit the plaintiff and in denying the defendant's motion to set aside the verdict upon the minutes.

The judgment must be reversed and a new trial ordered, costs to abide the event.

PUTNAM and HERRICK, JJ., concurred.

Judgment reversed and a new trial granted, costs to abide the event.