EMMA J. VEEDER, as Administratrix, etc., Respondent, v. THE VILLAGE OF LITTLE FALLS, Appellant.

100  343
108  306
108  309

In constructing a bridge over the Erie canal in the village of L. F., the State built a wing or retaining wall north of and parallel with the canal; the boundary line of the State lands was about twenty-one inches north of the wall. The village subsequently laid out a street along the northerly side of the canal; the description in the ordinance included said retaining wall and the strip of State land north of it, and said strip was subsequently used as part of the street. There was no railing or guard along the wall, and plaintiff's intestate in driving along the street on a dark night drove so far south that he, with his team and wagon, was thrown over into the canal, and he was drowned. A railing on the wall would have prevented the accident. In an action to recover damages, *held*, that the attempt on the part of the village to appropriate a part of the State lands for the street was a nullity; that the village had no legal right to put a railing on the wall, and no legal negligence could be predicated of an omission so to do, or of a failure of the village to obtain permission of the State to erect such a barrier.

*Sewell* v. *City of Cohoes* (75 N. Y. 45), distinguished.

It was claimed by plaintiff that defendant should have erected a barrier north of the wall outside of the State property. It appeared that at the west end of the wall there was a space of only eight and one-half feet for teams to pass. Had a barrier been placed on the line of the State lands the traveled way would be but about six and one-half feet. Defendant's counsel asked the court to charge, if the jury found that a railing

or guard north of the wall outside of the State property would be danger-
ous to the traveling public, the village authorities were not negligent in
failing to build it. This was refused. *Held* error.

(Argued June 5, 1885; decided November 24, 1885.)

Appeal from judgment of the General Term of the Supreme
Court, in the fourth judicial department, entered upon an order
made October 7, 1884, which affirmed a judgment in favor of
plaintiff; entered upon a verdict, and affirmed an order denying
a motion for a new trial.

This action was brought by plaintiff, as administratrix of the
estate of John A. Veeder, deceased, to recover damages for
alleged negligence causing the death of her intestate.

Plaintiff was drowned in the Erie canal, in the village of
Little Falls. The negligence complained of was the omission
of the village to maintain a barrier between Mohawk street
and the canal. The canal runs in an easterly and westerly di-
rection through the village, with the towing-path on the north
side. Two streets — German and Bellinger — cross the canal.
Mohawk street extends from Bellinger street eastwardly along
the north side of the towing-path to German street. The
approach along Mohawk street to the north end of the Ger-
man street canal bridge is over an embankment of earth sloping
westward about ninety feet, when it reaches the level of the
towing-path and the natural level of the street. For the pur-
pose of keeping this embankment in place, the west wing wall
of the bridge was extended westwardly along the entire length
of the embankment. This wall at the bridge is eight feet high,
and at the west end it is a little less than two feet high. The
coping of the wall is substantially on a level with the surface
of the street.

The further material facts are stated in the opinion.

*George F. Crumbey* for appellant. The wall, with the few
feet of traveled way on the north, formed an approach or land-
ing to the canal bridge, and was constructively as much a part
of the same as the direct approach from German street. (Laws

of 1839, chap. 207; 1 R. S. [6th ed.], § 370.)  Plaintiff was
bound to show affirmatively negligence on the part of the
defendant, and absence of negligence contributing to the acci-
dent on the part of her intestate.  (*Curran* v. *Warren Co.*, 36
N. Y. 153; *Massoth* v. *D. & H. C. Co.*, 64 id. 524; *Hale* v.
*Smith*, 78 id. 480; *Hart* v. *H. R. Bridge Co.*, 84 id. 56; 92
id. 658.)  The negligence charged against the defendant was
an omission of duty to place a guard or barrier on or along the
stone wall, and failure to maintain and care for a street lamp,
and to show a liability, power or authority to do these things
omitted to be done must be shown, and shown by a preponder-
ance of evidence.  (2 Dill. Mun. Corp. [3d ed.], 1306; *Mayor,
etc.*, v. *Conliff*, 2 N. Y. 165; *Sewell* v. *City of Cohoes*, 78 id.
480.)  The law imposed upon the State the duty to maintain
at its own expense not only such bridges across the canal as
were used by it as a part of its public works, but "road and
street bridges over the enlarged Erie canal in all places where
such bridges have been heretofore constructed," if, in the
opinion of the canal commissioners, "the public convenience
requires that they should be continued, whether the same have
been heretofore maintained at the expense of the State, or of
the towns, cities or villages where they are situate."  (Laws of
1839, chap. 207, § 1; 1 R. S. [6th ed.], § 370.)  The landing
from Mohawk street was as much an approach to the iron bridge
across the canal as the landing from German street.  (*Carpen-
ter* v. *City of Cohoes*, 81 N. Y. 24.)  To place railings or struc-
tures of any sort upon the State lands or upon bridges, or their
approaches continued by the canal commissioners over the
enlarged Erie canal, would have been a trespass even though
they appeared upon the maps and in the ordinances of the
trustees as parts of the streets of the village.  (*In re Rhine-
lander*, 68 N. Y. 105; 1 R. S. [6th ed.], § 370.)  The permis-
sion, implied or expressed, by the State authorities to thus
interfere with the State lands or the State structures, while it
would justify the acts of the village, would not impose upon
the municipal corporation a liability legally charged upon the
State, especially in the absence of negligence on the part of

the municipality in executing the work under license. (*Port Jervis* v. *Nat. Bk.*, 96 N. Y. 550.) Where private property or public property belonging to the State intervenes between the excavation or obstruction or proximate cause of the accident, and the streets of a municipal corporation, the village is not liable to a traveler who gets off the street and meets with injury on property belonging to another; but the owner of the land adjacent to or so near the street as to make its use unsafe and dangerous will be liable to the traveler who, while using ordinary care, falls into or receives injury from such excavation or obstruction. (*Beck* v. *Carter*, 68 N. Y. 283.) There was an entire failure of proof on plaintiff's part to charge defendant with either of the grounds of negligence alleged in the complaint, hence there was no question for the jury. (*Moore* v. *Goedel*, 34 N. Y. 527; *Curran* v. *Warren Co.*, 36 id. 153; *Massoth* v. *D. & H. C. Co.*, 64 id. 524.) The accident happened on State property, and whether the proximate cause was the stone wall or the canal, the State was equally liable. (*Carpenter* v. *City of Cohoes*, 81 N. Y. 21; *Hayes* v. *N. Y. C. & H. R. R. R. Co.*, 9 Hun, 63; *N. S. Ry.* v. *Dale*, 8 Ell. & Bl. 836; *Heacock* v. *Sherman*, 14 Wend. 58; *Dygert* v. *Schenck*, 24 id. 446; *Rex* v. *Kent*, 13 East, 220.) The whole slope north of the wall was an approach to the canal bridge, and constructively a part of the same, and the State, not the village, was charged with the duty of protecting it. (Laws of 1839, chap. 207, § 1.) The State, and not the village, was liable for any injury caused by the obstruction on its own property, even if the village has control of the few feet of the street north of the blue line. (*Beck* v. *Carter*, 68 N. Y. 293.) There was no question for the jury in regard to the maintenance of a light. (*Culhane* v. *N. Y. C. & H. R. R. R. Co.*, 60 N. Y. 133; *Cordell* v. *N. Y. C. Co.*, 75 id. 330.)

*Eugene E. Sheldon* for respondent. A municipal corporation is bound to place guards and barriers as a protection to the traveling public from a dangerous declivity, excavation, or unsafe place, within one of its roads, or without such a road,

and so near as to be dangerous to those using the road. (*Hyatt* v. *Rondout*, 44 Barb. 385; *Hayden* v. *Attleboro*, 7 Gray, 330; *Coggswell* v. *Lexington*, 4 Cush. 307; *Puffer* v. *Orange*, 122 Mass. 389; *Warner* v. *Holyoke*, 112 id. 362.) If Mohawk street was laid out unlawfully, yet defendant having declared Mohawk street to be one of the streets of the village, and having assumed authority to control the land as a street, it is chargeable with the same duties and subject to the same liabilities as if such street had been laid out lawfully, and defendant is estopped from questioning that Mohawk street is a lawful road or street. (*Sewell* v. *City of Cohoes*, 75 N. Y. 45, 52; *Houfe* v. *Town of Fulton*, 34 Wis. 608; 17 Am. Rep. 463; *Stark* v. *Lancaster*, 57 N. H. 88; *City Aurora* v. *Colshire*, 55 Ind. 484; *Phelps* v. *Mankato*, 23 Minn. 276; *Mayor, etc.*, v. *Sheffield*, 4 Wall. 189; *Brusso* v. *Buffalo*, 90 id. 679.) If it had been shown that there was a duty upon the part of the State to guard the dangerous street, the neglect of the State would furnish no excuse to defendant and no reason why an action should not be maintained against defendant. (*Davenport* v. *Ruckman*, 37 N. Y. 574; *McMahon* v. *Second Ave. R. R. Co.*, 75 id. 231; *Abbott* v. *J. G. & K. H. R. R. Co.*, 80 id. 27; *Mayor, etc.*, v. *T. & L. R. R. Co.*, 49 id. 657; *Brooklyn* v. *B. C. R. R. Co.*, 47 id. 475.) A railroad company has just as much right to use or destroy a street as have the canal authorities. (*Dillage* v. *N. Y. C. R. R. Co.*, 2 Alb. L. J. 356; *Baxter* v. *S. D. R. R. Co.*, 11 Abb. [N. S.] 178.) The defendant was guilty of negligence in not maintaining lights near this dangerous wall, and particularly, so as to light up the west end. (*Weed* v. *Ballston Spa*, 76 N. Y. 333; *Storr* v. *Utica*, 17 id. 104; *Buffalo* v. *Holloway*, 7 id. 496; *Seneca Falls* v. *Zalinski*, 8 Hun, 574.) If there had been no absolute duty to place lights near the wall, yet after the defendant had placed a light at the bridge, the defendant was guilty of negligence in not keeping it in order. (*Doan* v. *D. C. Co.*, 71 N. Y. 288; *Kissinger* v. *N. Y. & H. R. R. Co.*, 56 id. 543; *McGovern* v. *N. Y. C. & H. R. R. R. Co.*, 67 id. 423.)

ANDREWS, J.   It must be assumed in determining this appeal, that the blue line, which indicates the boundary of the State land on the▪northerly side of the Erie canal at Little Falls, west of German street bridge, was located on a line parallel with the wing or retaining wall of the bridge, and about twenty-one inches northerly therefrom.   The land north of the wall, within the blue line, being a strip about ninety feet in length, and of the width stated, was used as a part of Mohawk street.   The principal negligence charged, is the omission of the village to erect a barrier upon or along the retaining wall to prevent persons traveling in Mohawk street from driving upon or falling over the wall.   The retaining wall was constructed by the State as early as 1840, and was a State structure.   It served the purpose of protecting the embankment on Mohawk street, made necessary to reach the elevation of the bridge, and it also protected the towing-path from the sliding of the embankment.   Mohawk street was laid out in 1832.   There was then a bridge at German street.   The ordinance of the village laying out Mohawk street described it as running from Bellinger street on the west (along the canal) to the north abutment of the bridge, and as being at that point thirty feet in width, and it designated the center line as terminating on the east at the edge of the bridge abutment sixteen and one-half feet south of the north line of the street.   In 1878 the village authorities re-described the streets in the village, and Mohawk street was described as being thirty feet wide at its easterly end.   The action of the village authorities in 1832 is inexplicable.   The street as described appears to have included not only the whole towing-path of the canal as it was then located, but a part of the water-way.   It appears that at the time of the enlargement of the canal but little change was made on the north side of the canal at this point.   The description made in 1878 makes the street thirty feet wide at its junction with German street, but it is undisputed that there was only a space of twenty feet, or thereabouts, between the north line of the street and the retaining wall.   The retaining wall and the twenty-one inches north of it, in both records,

was included in the boundaries of Mohawk street, but the wall and the strip north of it, within the blue line, was the property of the State, which the village could not appropriate for a street, and its attempt to do so was a nullity.

The village, however, by the sufferance of the State, and not as far as appears by any express permission or agreement, used this strip of land along the retaining wall as a part of Mohawk street. It may be said, perhaps, that the State adapted it to such use. The State, when it built the retaining wall, filled in the landing, or space between the retaining wall and the north side of Mohawk street from the foot of the slope at the west end of the wall to the bridge, a distance of about ninety feet, and the State has from time to time graveled the street at this point. The village authorities have also exercised jurisdiction over the street north of the retaining wall. It has repaired the way, directed the removal of obstructions, and in 1836 it attempted to widen the street at the easterly end, but the project seems to have been abandoned. What has been done by the State and by the village has, so far as appears, been done by each jurisdiction independently, without consultation or mutual agreement.

The evidence tends to establish that the intestate on a dark night was driving "pretty fast" along Mohawk street toward the bridge, and when he approached the west end of the retaining wall, drove too far to the south, so that the right wheels of the wagon were on the towing-path, and the left wheels on the road-bed. When he had proceeded so far that the wall was higher above the towing-path than the axle-trees of the wagon, they caught on the wall, and the intestate with his team and wagon were thrown over into the canal and he was drowned. A railing on the wall would have prevented the accident. But the wall was on the State land. The village had no legal right to put a railing on it, and consequently there was no legal duty on the village to erect one thereon. Legal negligence on the part of the village cannot be predicated of an omission to do what there was no legal right to do. (*Carpenter* v. *City of Cohoes*, 81 N. Y. 21.) Nor can it be

predicated, we think, of a failure of the village authorities to obtain permission from the State to erect a barrier on the State land, although such permission, if applied for, might have been granted. The danger was not very obvious, as is shown by the fact that the street had been used in substantially the same condition as it was at the time of the occurrence in question for forty years, without the happening of any accident from the location of the wall. The policy of the State in respect to encroachments on the property of the State devoted to canal purposes is shown by chapter 657 of the Laws of 1866, which makes it the duty of the canal commissioners to cause to be removed from lands taken from the State for the purposes of the canal, except in the thickly built part of cities, all encroachments thereon by buildings, fences or other structures. The trial judge expressly charged that the village had no right or authority to build a guard or barrier upon the wall, unless permitted by the State, and this is not only the law of the case on this appeal, but the proposition is correct in principle. But we think the court erred in refusing to charge as requested by the counsel in behalf of the defendant, that if the jury should find that a railing or guard north of the wall, outside of the State property, would be dangerous to the traveling public, the village authorities were not negligent in failing to build a guard there. The trial judge in denying the motion for a nonsuit, and at the close of the evidence, held that the complaint was broad enough to authorize the jury to determine whether a barrier should have been placed outside of the blue line. It appears that at the west end of the wall there was a space of only about eight and one-half feet between the north face of the wall and the sidewalk on the north side of Mohawk street. The State land extended, as has been said, twenty-one inches north of the wall. If a barrier had been placed on the boundary of the State land, the traveled way, at the west end of the wall, would have been contracted from eight and one-half feet to a little more than six and one half feet. The jury might very well have found that such an obstruc-

tion would have constituted a greater danger than the one sought to be avoided, and it could not be negligence in the village to omit to erect a barrier on the boundary line, if such barrier would have rendered the street more unsafe than it was in its existing condition. It is unnecessary to determine whether a verdict could be sustained by reason of any other omission than a failure to erect a barrier along the wall. This was the principal negligence charged, and the defendant was entitled to a proper charge upon the point suggested. The case of *Sewell* v. *City of Cohoes* (75 N. Y. 45) does not control this case. In that case the city permitted a structure erected by a third person, to overhang the traveled path, rendering its use dangerous, and it was held that the fact that the city had not acquired title to the land which it had assumed to appropriate for a public street, was not a defense to the action. In this case there was no defect in the roadway. The danger, if any, was extrinsic, and arose from a structure made by the State on its own land, over which the village had no control, and with which it had no right to interfere.

For the error in the refusal to charge, as requested, the judgment should be reversed and a new trial granted.

All concur, except EARL, J., taking no part.

Judgment reversed.