MARY CARR, as Administratrix, etc., of JOSEPH CARR, Deceased, Respondent, *v.* MICHAEL SHEEHAN and Another, Appellants.

*Negligence — duty of the owner of a dangerous sand bank to warn persons carting sand therefrom — when the drawer of sand therefrom is guilty of contributory negligence.*

Where a person owning a sand bank knows that it is in a dangerous condition, it is his duty to warn a person buying and carting sand therefrom.

Where a person has been in the habit of drawing sand from sand banks for years, and has seen sand banks cave in, and has knowledge of the dangerous condition of a sand bank from which he is loading his cart with sand, and yet goes to work and continues to work at such bank under such circumstances, he assumes the risk of the position, and if an accident occurs he is guilty of contributory negligence, and is not in a position to charge negligence upon the vendor of the sand.

APPEAL by the defendants, Michael Sheehan and another, from a judgment of the County Court of Monroe county in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 5th day of April, 1893, upon the verdict of a jury, and also from an order entered in said clerk's office on the 5th day of April, 1893, denying the defendants' motion for a new trial made upon the minutes.

*George W. Hall,* for the appellants.

*C. D. Kiehel,* for the respondent.

HAIGHT, J.:

This action was brought to recover damages for a personal injury sustained by the plaintiff's intestate. The suit was originally brought by him, but he died after the rendition of the verdict.

It appears that the defendants were the owners of a sand bank near the village of Brighton, N. Y., and were engaged in selling sand therefrom by the load. On the 3d day of August, 1892, Carr went to the defendants' sand bank and got a load of sand. On the same day he returned for a second load, and whilst engaged in shovelling the sand into his wagon the bank caved in, covering his legs with sand up to his body, causing the injury for which damages are sought to be recovered.

Upon the question of the defendants' negligence there is some conflict in the evidence, which doubtless raised a question for the jury upon that branch of the case.

Carr testified that when he went back for the second load he stated to the defendant Michael Sheehan that he wanted some coarse sand; that the other was too fine, and that Sheehan said, " Drive right around here where the sand lay in the bank. Keep out this way off the sand so that you can take sand clean from the bottom, without running over it and trampling it down, and when I got where he wanted me he said ' Whoa,' and the team stopped. I then jumped out and commenced to shovel as fast as I could. I drove in between the sand bank and dirt. It was dug down a little below the top and I drove pretty close to that. I should think twelve or thirteen feet from the bank." He further testified that the first thing he knew the bank came down from the top and knocked him back against the wagon.

The defendant Michael Sheehan testified that he saw the plaintiff on the day of the accident, when he came after this load of sand, and told him " The bank was dangerous up in the place where he was, and to get out, and he said, ' No, he wouldn't; he would stay there,' and I said, ' You want to get down, it is dangerous and may happen to fall down.' He turned his horses a little out from there, and I told him that would not do, to get out, and he said, ' No, he wasn't going to move out for me or anybody else; he would stay there.' " Two other persons were present who corroborate the defendant as to his warning that the bank was dangerous. The defendant further denies that he told the plaintiff to stop his team at that place. Carr admits that at the time he went for the first load the defendant said something, but he does not recollect what it was. He, however, denies that at the time he went for the second

load anything was said to him in reference to the bank being dangerous. If the defendant knew that the bank was dangerous it was doubtless his duty to warn Carr, and as to whether he did so was a question of fact for the jury.

Upon the question of Carr's contributory negligence we have more trouble. He testified that he had been in the habit of drawing sand from sand banks for years, and had seen banks cave in at previous times when he had been drawing sand. He, therefore, knew of the liability of banks of that character to cave. He further testified that the bank was nearly perpendicular, and that at the top there was a little projection. Speaking in reference to the first time he was there, he said the bank was straight up and down, but he did not see any reason to apprehend danger, but when he returned he says, " I did when I came back for the second load." And in answer to the question as to whether the bank was in the same condition when he went in for the second load, he replied, " It was worse;" that he noticed that the bank was overhanging more before he went underneath it. But, notwithstanding, he went under where the bank hung over; that the bank overhung more because the defendant had knocked down the sand before he went in and he observed that fact, and concludes by saying, " I saw it was not safe." It thus appears that he knew the condition of the bank — knew that it was liable to cave in, and yet he went to work loading his wagon under these circumstances. We are inclined to the view that he assumed the risk and took the chances and was, therefore, guilty of contributory negligence. . It does not appear that the defendants knew anything more about the bank than he. It was before his eyes. He could see its height; that it was perpendicular and that it was composed of sand. He was familiar with sand banks and had for years worked in drawing sand therefrom, had seen them cave and on this occasion knew that the bank was not safe.

In *Marsh* v. *Chickering* (101 N. Y. 396–399) it was said : " Where the servant has equal knowledge with the master as to the machinery in use or the means employed in the performance of the work devolving upon him and a full knowledge of existing defects, it does not necessarily follow that the master is liable for injuries sustained by reason of the use thereof."

In 2 Thompson on Negligence, 1009, it is said : " The master is

under no higher duty to provide for the safety of the servant than the servant is to provide for his own safety. It follows that if the knowledge or the ignorance of the master and that of the servant in respect of the character of the machine are equal, so that both are either without fault or in equal fault, the servant cannot recover damages of the master."

The relation of master and servant did not exist between Carr and the defendants, but he appears to have had equal knowledge with them in reference to the condition of the bank, and is, consequently, not in a condition to charge negligence upon them and at the same time excuse himself. It follows that the defendants' motion to dismiss the complaint should have been granted.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to abide the event.

DWIGHT, P. J., LEWIS and BRADLEY, JJ., concurred.

Judgment and order appealed from reversed and new trial granted, with costs to abide the event.