CATHARINE S. BAKER, as Administratrix, etc., of WARREN M. BAKER, Deceased, Respondent, *v.* JOHN H. SUTTON and CONRAD F. SUDERLY, JR., Appellants.

*Negligence — an employee killed by a slide from a clay bank — a voluntary assumption of the risk bars a recovery — what preponderance of evidence the appellate court should not disregard.*

In an action brought to recover damages resulting from the death of the plaintiff's intestate caused by the alleged negligence of the defendants, it appeared that the plaintiff's intestate, who was engaged with others in removing clay from a bank in the defendants' brick yard, was killed by the falling of a portion of the bank. Five or ten minutes before the accident the bank was observed to be crumbling, and when a large piece of clay fell, most of the deceased's fellow-workmen ran away, but after watching for a time, they returned to their work, the deceased expressing the opinion that there was no use of feeling uneasy; and upon the overseer of the yard warning the men of the danger of a slide, and advising them to take the clay from another portion of the bank, which would have been a safe locality to work in, the deceased replied that there was no clay loose at that point; that the work was so nearly completed that there was no use of it, and that they could complete it before the bank caved. Thereupon all the men continued working where they were, and the threatened slide occurring a few minutes later, the deceased was caught in it and killed.

*Held,* that the plaintiff was not entitled to recover;

That the intestate had voluntarily assumed an obvious risk, and that his own negligence had contributed to his death.

APPEAL by the defendants, John H. Sutton and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 25th day of May, 1896, upon the verdict of a jury rendered after a trial at a Trial Term of the Supreme Court held in and for the county of Albany, and also from an order entered in said clerk's office on the 29th day of May, 1896, denying the defendants' motion for a new trial made upon the minutes.

*Frank H. Osborn,* for the appellants.

*J. Newton Fiero,* for the respondent.

PARKER, P. J.:

The action is brought to recover damages sustained by the death of the plaintiff's husband, which she claimed was caused by the negligence of the defendants. The facts are substantially as follows: The defendants were the owners of and operating a brick yard on the west bank of the Hudson river in the county of Albany. On the west side of the yard was a high clay bank 400 or 500 feet in length, from which for some years clay had been taken to make brick. In February, 1894, a slide had occurred at the south end of that bank, and a portion of it had slid down and out into the yard a distance of some 100 feet or more. On June 8, 1894, at the time he was killed, the deceased was engaged, as an employee of the defendants, in hauling clay from the north side and near the east end of such slide, to another point in the yard designated as pit No. 4. He was driving a horse and cart, which was filled by several shovelers at the end of such slide, and it was his business to drive and dump the load into the pit, a distance of some 200 or 300 feet northeasterly from the point where it was loaded and to then return for another load. There were several men at work in the gang which filled his cart. There were also three other gangs of men at work taking clay from the same side of the slide and nearer to the foot of the bank than Baker was. After they had been thus at work for about two hours, on the morning of the eighth, a portion of the bank at a point north of the February slide gave way and slid down in a southeasterly direction and extended out into the yard towards the place where Baker's carts were being loaded. Baker was on his way back from the pit for another load and was caught in this slide and killed. The locality at which this last slide occurred had not been worked for several years. During that time clay had been taken from the bank at other parts and at this locality the bank seemed hard and stable. A path led up across it from the yard to the top of the bank, and for years the people living on the bank and the employees had been in the habit of using it as a way to and from the yard. The bank over which the path led was a part of that which slid away. Prior to the morning of the accident the bank at that point had all the appearance of being as solid and safe as it had been for the last six or seven years, during which it had not been used. Two or three days before the slide one of the defend-

ants was upon the bank inspecting it, "looking around to see if there were any cracks in the bank," and he then found no evidence of insecurity in it. Several of the employees daily passed up and down that path.

Some five or ten minutes prior to the slide some of the men at work there noticed that the bank was crumbling off, and then a large piece of clay some ten feet square fell and gave an alarm that caused most at least, if not all, of the men who were digging and loading the carts, to run from that locality to a safer distance. The men remained watching some five or ten minutes and then went back to their work. Several witnesses testify that after the large piece of clay fell Baker spoke about it and expressed his opinion that there was no use of feeling uneasy. Kidd, a man in charge of the yard, also came up and warned the men of the danger of a slide. He advised them to take the clay from the south side of the February slide, which would have been a safe locality to work in. But Baker replied that there was no clay loose on that side and that the pits were so nearly filled there was no use of it; "that he had only five or six more loads to make and he could make them before the bank caved." Thereupon all the men continued to work as they were, Baker among them, but kept a close watch of the point where the bank threatened to fall. In a few minutes the threatened slide occurred. All were active enough to get away from it, except Baker, who was so far behind the others in getting out that he was overtaken and killed. There was also some evidence that a perpendicular bank is more capable of sliding than a bank with benches or slopes and that this bank was not worked that way. It was nearly perpendicular where the slide occurred and from 80 to 100 feet high.

Such are the facts as they appear without contradiction, or by a preponderance of evidence that is controlling in the case.

Without reference to the question whether there is sufficient evidence to hold the defendants guilty of any neglect that caused this injury, it is plain that upon the facts above stated the deceased deliberately took the risk of continuing his work in the face of a danger well known to himself — one which had just manifested itself in an unexpected, but startling and unmistakable manner —

274            BAKER *v.* SUTTON.

and that it was his own deliberate negligence that was the cause of his death.  He knew that a large mass had already fallen and that a slide was imminent.  He saw that all his associates expected it, and was warned by the overseer of the yard to cease his work at that dangerous point and change to a place of safety.  But he insisted that they were all unnecessarily scared, and not only continued to work there himself, but advised his fellow-workers to continue with him, and openly expressed to them his opinion that they could finish filling the pit before the slide came.

That no recovery can be had for an injury so incurred is clearly settled for the following reasons:

The risk was obvious, and he voluntarily assumed it.  (*Crown* v. *Orr*, 140 N. Y. 450; *Shaw* v. *Sheldon*, 103 id. 667; *Carr* v. *Sheehan*, 81 Hun, 291.)

And his own negligence contributed to his death.  (*Weston* v. *City of Troy*, 139 N. Y. 281; *Moeller* v. *Brewster*, 131 id. 606.)

It is not necessary to cite many authorities upon these propositions, and doubtless the respondent's counsel would not claim that a recovery could be had upon the facts above stated.  But his contention is that there is evidence in the case from which the jury might find not only the negligence of the defendants, but also that the deceased was working in ignorance of the critical condition of the bank, and that he was caught unawares and without any fault on his part.

Without attempting to recite and compare the evidence of the several witnesses upon that question, it is sufficient to say that, from a careful study of the case, I am unable to reach that conclusion. The narrative of the defendants' witnesses of what occurred at the time of the accident is a plain and straightforward statement.  It is neither an unnatural nor improbable one.  Although some of the witnesses were still in the defendants' employ, their statement is substantially the same as that of others who were in no way connected with the defendants.  The six witnesses called by the defendants, and who testify to the facts substantially as above stated, are hardly contradicted by the two or three witnesses upon whom the plaintiff relies.  Their evidence is to the effect that they heard no warning given and nothing said by Baker.  They do, however, agree in most particulars as to the falling of the huge piece of clay

and the appearance of the bank, and the conduct of the shovelers just prior to the fatal slide. And, in my judgment, it is impossible to read all the evidence without concluding that the facts were such as the defendants' witnesses state them to have been. The preponderance of evidence against the conclusion which the jury have reached is so very great that it becomes our duty to disregard it and to reverse the judgment entered thereon. (*Shires* v. *Fonda, etc., R. R.. Co.,* 80 Hun, 94; *Hope* v. *Fall Brook Coal Co.,* 3 App. Div. 77; *Van Patten* v. *Schenectady Street R. Co.,* 80 Hun, 496; *Kaare* v. *Troy Steel & Iron Co.,* 139 N. Y. 369.)

Judgment and order reversed and a new trial granted, costs to abide the event.

All concurred.

Judgment and order reversed and a new trial granted, costs to abide the event.