WARNER v. VILLAGE OF RANDOLPH.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1897.)

1. APPEAL—REVIEW OF FACTS—CONFLICTING EVIDENCE.
    A finding that plaintiff fell from an unguarded embankment at a point within the street line will not be disturbed, where he so testified, though six witnesses testified to having found, on the next day, tracks in the mud indicating that he fell at another place.

2. MUNICIPAL CORPORATIONS—UNGUARDED EMBANKMENT — CONSTRUCTIVE NOTICE.
    A finding that a village had constructive notice of the absence of a guard rail from the outside of a curve in a sidewalk at the approach to a bridge, the embankment at such point being about eight feet high, is sustained by proof of the absence of such rail for six weeks or more before the accident.

3. EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY.
    In an action for personal injuries, photographs shown to be fair representations of the place where the accident occurred are admissible.

4. APPEAL—HARMLESS ERROR.
    Error, if any, in admitting photographs of the scene of the accident is harmless where appellant also introduces photographs of the same locality, taken at about the same time, and by the same photographer.

Appeal from trial term, Cattaraugus county.

Action by Marcellus K. Warner against the village of Randolph. From a judgment on a verdict for plaintiff, and from an order denying a new trial on the minutes, defendant appeals. Affirmed.

On the question of whether plaintiff fell from the sidewalk between the sewer pipe and the bridge or between the pipe and the building, defendant introduced six witnesses who testified that on the morning following the accident they went to the scene thereof, and saw in the mud between the sewer pipe and the building indications of some person having fallen there, and that there were no like traces between the sewer pipe and the bridge. On the issue of constructive notice to the village of the absence of a guard rail at the embankment, plaintiff's witness Nora Cook testified that there had been no rail there since the fall of 1892; that on the evening of March 8, 1893, her attention was particularly directed to the absence of such rail by the fact that her companion almost fell over the embankment. Plaintiff's witnesses Cordelia Butler and Carrie Thorpe were with the witness Cook on the evening of March 8th, and testified to the absence of the guard rail on that evening. Plaintiff's witness Emeline Brown testified that there was no guard rail at the embankment on March 19th, and plaintiff's witness Julia Winkley testified to the absence of a rail on the night of the accident.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

A. Wentworth and Frank W. Stephens, for appellant.
T. H. Dowd and W. S. Thrasher, for respondent.

HARDIN, P. J. On the 19th day of April, 1893, about 11 p. m., the plaintiff arrived by rail at the depot in the village of the defend-

ant.   The night was dark, and no street lights were maintained by the defendant at or near the bridge over the Conewango creek, where the accident occurred.   The plaintiff carried an umbrella and a small bundle of soiled linen.   He was accustomed to the location of the street, and usually passed along the south side thereof.   On this occasion, when he reached Main street from the depot, he passed over to the north side of Main street, near Depot street, in order to derive some benefit from a lantern which was being carried by another man just ahead of him, who pursued Main street until he came to Church street, some little distance from the bridge.   Plaintiff passed along on the north sidewalk until he came near the bridge, and then, knowing that the walk deflected some to the right, the plaintiff attempted to make the turn, and unfortunately walked off the platform near the bridge, and apparently so near to it that his umbrella caught on the bridge railing, and was torn.   He fell down a distance of some eight feet, striking his right hip upon a stone near the sewer pipe.   He testifies that he fell between the sewer pipe and the bridge, and details the exploits necessary to enable him to get back into the street, and to reach the Brooklyn Hotel, nearly opposite the point where he fell.   He says:

"I walked along quite briskly, and walked down to or near to the bridge, and supposed I was turning to the right to go onto the bridge, and the first thing I knew I walked right off close to the bridge down into the creek, and down into the place there.   I walked off and fell.   I struck on my right hip.   I hit a large stone.   I fell probably eight feet or such a matter, and near the bridge. I put my left hand onto a sewer pipe that was there, and my umbrella caught onto the corner of the railing to the bridge.   It didn't take the umbrella out of my hand, but tore it a little.   From this I know that I fell at a point between the sewer pipe and the bridge.   I struck on my right hip and right leg. *  *  *  In a moment I undertook to get out of there, rolled right over that pipe, and tried to get up."

In the course of his cross-examination he says:

"The bridge was on my right-hand side as I went down, and on my left-hand side was the building.   The distance between the bridge and building, I should judge, was 10 or 11 feet.   Between the bridge and the building there was a platform, above seven feet and some inches above the ground below. Underneath the platform was this sewer pipe.  *  *  *  I went down between the sewer pipe and the bridge, so that the sewer pipe was on my left hand and the bridge on my right hand as I went down.  *  *  *  As I approached the rise, I slackened up.   At the time I was trying to observe the bridge, it was so dark I couldn't really see it, bearing to the right."

No witness was present when the plaintiff fell, and none observed his course, or the circumstances attending his fall.   However, several witnesses were called in behalf of the defendant, who gave evidence as to their observations of the place where the fall took place, and detailed certain facts tending to indicate that the plaintiff was mistaken when he said he fell between the bridge and sewer pipe, and tending to indicate that he fell between the sewer pipe and the building; but, as none of them saw him fall, or while he was down, their evidence is, at most, circumstantial;  and upon the evidence a question of fact was presented for the jury to determine as to where the plaintiff fell, and whether his version thereof was correct or not,

and it was not error to submit that question to the jury upon the conflicting evidence that related to it. In Wright v. Saunders, 65 Barb. 215, affirmed *42 N. Y. 323, it appeared that there were four witnesses against one, and the court held that it was the right of a. referee to believe the one and disbelieve the four. We think the language used by Danforth, J., in Archer v. Railroad Co., 106 N. Y. 602, 13 N. E. 323, is appropriate to the question presented. He said:

"It is enough for us that there was sufficient evidence to present a case with two sides, and consequently sufficient for the jury to pass upon, and we see no reason to suppose they were not guided in their decision by a conscientious judgment and belief fairly formed in view of all the circumstances of the case."

We think the evidence presented a question of fact which the trial court properly submitted to the jury in respect to whether the plaintiff was free from contributory negligence. The court, in very clear and positive language, instructed the jury that the burden of proof was upon the plaintiff, and that, if they found the version given by the plaintiff to be correct, then they might find that the plaintiff was free from contributory negligence. On the contrary, in equally clear and positive language he instructed the jury that if they found that he fell at a point between the sewer pipe and the building he could not recover. As we have examined the evidence with a view of determining whether the verdict was in accordance with the evidence, we are inclined to say, after such examination, that the trial judge was not only justified, but it was his duty, to submit the case, in that aspect, to the jury; and in examining the evidence we have found no occasion to disturb the verdict so far as it finds that the plaintiff was free from contributory negligence.

2. It appears by the evidence that no railing was maintained between the bridge and the building at the time the plaintiff walked off and received the injuries of which he complains. At one time there was a railing at the point. The evidence that there was no railing there on the occasion of the injury was clear and positive, and there was evidence that there had been no railing there for the six weeks preceding the injury. The testimony of Nora Cook and the witnesses Butler, Thorpe, Brown, and Winkley was such that the question was properly for the jury to determine how long the absence of the railing had been, and if for the period of time mentioned in their evidence, then it was for the jury to determine whether the absence had been of sufficient length of time to warrant the finding that there was constructive notice to the defendant's officers of its absence. In submitting that question to the jury we think the court was entirely correct in the rule of law laid down in that regard, notwithstanding the defendant gave evidence tending to contradict the evidence offered by the plaintiff. Wilcox v. Railroad Co., 88 Hun, 263, 34 N. Y. Supp. 744; Chisholm v. State, 141 N. Y. 246, 36 N. E. 184; Miller v. Railroad Co. (Sup.) 31 N. Y. Supp. 322, affirmed 146 N. Y. 367, 41 N. E. 90.

There was a conflict in the evidence as to whether the plaintiff fell at a point outside of the highway, and the evidence warranted the jury in finding that the point where the plaintiff fell was within the highway. The judge pointedly instructed the jury as follows:

"I charge that to you explicitly and plainly as a proposition of law, that before the plaintiff can recover in this action you must be satisfied from the evidence that he fell off substantially where he claims he did, between the sewer pipe and the bridge."

And again he repeated the converse of the proposition in the following language:

"That if he did fall off, did meet with the injuries and accident that he now complains of by falling between the sewer pipe and the building, that he cannot recover."

In Maxim v. Town of Champion, 50 Hun, 88, 4 N. Y. Supp. 515, affirmed 119 N. Y. 626, 23 N. E. 1144, I had occasion to discuss the rules of law applicable to a case somewhat similar to the one before us, and to quote the language of the court of appeals in Jewhurst v. City of Syracuse, 108 N. Y. 303, 15 N. E. 413, where it was held, viz.:

"Where there is no visible boundary to the line of a street, and a portion of the roadway traveled on is so near the line, although really outside of the street, as to induce the belief in any one passing upon the street and exercising reasonable care that he is within the line thereof, if such portion is for any reason rendered dangerous for travel, and the city has notice thereof, and such danger can be remedied by the exercise of reasonable care, either by the erection of a guard or railing along the line of the street, or in some other way, and the city neglects to do this, it is liable to one injured because of such defect while traveling upon such portion of the roadway, if he himself is free from any contributory negligence."

Upon the facts developed by the testimony in this case, we think the question of the defendant's negligence was fairly dealt with by the trial judge, and that the jury have found in accordance with the instructions given by him, and that the defendant was negligent in leaving the street in a dangerous condition, and their verdict in that respect is entirely satisfactory.

Appellant's learned counsel calls our attention to Kaare v. Iron Co., 139 N. Y. 369, 34 N. E. 901. We think the case in hand differs essentially from that one. There the depression or defect was so slight that it would not "indicate to a person of ordinary prudence the appearance of danger." In that case the plaintiff was the sole witness on his own behalf, and to all the essential facts relating to the accident, and as to them he was confronted by several witnesses contradicting in a most positive manner "all material facts stated by him," and it was said:

"There does not appear to be any possible chance of mistake. Either he or they testified falsely. * * * Indeed, their version seems to be more probable than that given by the defendant. The plaintiff waited more than two years and a half before he commenced his action, and then did not allege in his complaint the defect in the plank, now the main ground of complaint against the defendant. The plaintiff testified through an interpreter, and hence his manner of testifying and his appearance could not have been of much aid to the judge in weighing his evidence."

And the learned judge who delivered the opinion in that case added, viz.:

"Where there is a vast preponderance in the evidence in favor of the defendant, and the defense is supported by numerous witnesses apparently entitled to credit, and the plaintiff's case stands upon his own evidence, either unsupported or slightly supported, the general term should exercise an independent

judgment, and give the defendant appealing to it the full benefit which the law, by the right of appeal, intends he should have."

Those remarks were made in adverting to the circumstance that the general term in that case had placed considerable confidence upon the opinion of the trial judge in refusing to grant a new trial.

While we have great confidence in the opinion of the learned trial judge who refused the motion for a new trial in this case, we have not rested our conclusion thereon, but have examined the evidence and circumstances that were before the jury, and are of the opinion that the verdict was justified. We think the case in hand differs essentially from Baker v. Sutton, 11 App. Div. 271, 42 N. Y. Supp. 116. In that case the learned judge delivering the opinion said:

"It is impossible to read all the evidence without concluding that the facts were such as the defendants' witnesses state them to have been. The preponderance of evidence against the conclusion which the jury have reached is so very great that it becomes our duty to disregard it, and to reverse the judgment entered thereon."

As we have already stated, an examination of the evidence in the appeal book before us leaves upon our mind the impression that the verdict of the jury is in accordance with the weight of the evidence. Nor does Hope v. Coal Co., 3 App. Div. 70, 38 N. Y. Supp. 1040, aid the appellant. In that case the verdict of the jury was criticised, and the learned judge who delivered the opinion, after considering the evidence, stated that the verdict "must necessarily have been the result of misconception, conjecture, or surmise." No such criticism legitimately applies to the case in hand.

Appellant calls our attention to Veeder v. Village of Little Falls, 100 N. Y. 343, 3 N. E. 306. We think it does not aid the contention of the appellant. In that case the retaining wall was on state land, and the village had no legal right to put a railing on it, "and consequently there was no legal duty on the village to erect one thereon"; and the error that was committed at the trial consisted in the court's refusing to charge "that if the jury should find that a railing or guard north of the wall, outside of the state property, would be dangerous to the traveling public, the village authorities were not negligent in failing to build a guard there." The case is quite unlike the one in hand. Nor does Murphy v. City of Brooklyn, 118 N. Y. 575, 23 N. E. 887, aid the contention of the appellant, as in that case it appeared that the city did not owe the plaintiff any duty of protection to guard the hole, "as it was not so close to the street as to make the latter unsafe."

We think the admission of the photographs presented no prejudicial error. There was some evidence tending to show that they presented a fair representation of the premises where the injuries were received, and when photographs are shown to present a fair representation of the general features of the situation their reception in evidence is permissible. Cowley v. People, 83 N. Y. 464; People v. Buddensieck, 103 N. Y. 487, 9 N. E. 44; Archer v. Railroad Co., 106 N. Y. 589, 13 N. E. 318; Alberti v. Railroad Co., 118 N. Y. 88, 23 N. E. 35. We think the defendant's general objection to them was properly overruled. Cowley v. People, 83 N. Y. 464. Besides, it

appeared the defendant put in evidence photographs taken at about the same time, of the same locality, and taken by the same photographer. We think the case was fairly presented by the trial judge to the jury, and that no errors of law were committed during the progress of the trial, and that the verdict should be sustained.

Judgment and order affirmed, with costs. All concur.