JENS KAARE, Respondent, *v.* THE TROY STEEL AND IRON CO., Appellant.

*It seems,* that where, upon a trial, there is a vast preponderance in the evidence in favor of defendant, given by numerous witnesses apparently entitled to credit, and plaintiff's case stands upon his own testimony, either unsupported or but slightly supported, and a verdict is rendered in his favor, the General Term, on appeal from an order denying a motion for a new trial, should not affirm the order simply out of deference to the trial judge, but should exercise an independent judgment, and grant a new trial on the ground that the verdict is against the weight of evidence.

Where, however, in such case the General Term, in the exercise of its discretion, refuses a new trial, this court has no jurisdiction to give relief.

In an action by an employee to recover damages for alleged negligence, plaintiff's testimony was to the effect that when engaged in the night time wheeling a load upon a wheelbarrow up an elevated platform leading to defendant's boiler house, he fell therefrom and was injured; the platform was but two feet wide, was not lighted and had no guards upon the sides ; plaintiff had used the platform for two weeks, wheeling his barrow up and down it, and for one week in the night time; he did not ask to have it made wider, or complain of its manner of construction. *Held,* that if the platform was dangerous for use on account of its being too narrow, plaintiff knowing its condition voluntarily took the risk, and could not sustain a recovery on the ground that this defect caused the injury.

Plaintiff claimed the accident was caused by a depression in one of the planks of the platform, caused by its use, which caught and tipped over the barrow. This depression was so small that it escaped the attention of numerous other persons who used the platform, some of whom specially examined it. *Held,* that the evidence failed to establish want of ordinary care; that the depression was not a defect which would indicate to a person of ordinary prudence the appearance of danger.

It appeared without dispute that torches were furnished to the workmen amply sufficient to light the platform. *Held,* that if the workmen failed to use these torches, and the platform was not sufficiently lighted, it was the fault of the workmen and not the defendant, and so it was not liable; that it discharged its duty in this respect by furnishing sufficient torches.

(Argued June 29, 1893 ; decided October 3, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order

made July 2, 1892, which affirmed a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover damages for personal injuries received by plaintiff while in defendant's employ.

The facts, so far as material, are stated in the opinion.

*R. A. Parmenter* for appellant. Defendant's motion for a new trial on the ground that the verdict was against the weight of evidence should have been granted. (Code Civ. Pro. §§ 999, 1347; *Voisin* v. *C. M. Ins. Co.*, 123 N. Y. 129.) The trial judge erred in denying the defendant's motion for a nonsuit. (*Burk* v. *Witherbee*, 98 N. Y. 562; *Hickey* v. *Taafe*, 105 id. 26; *Steinway* v. *E. R. Co.*, 43 id. 123; *DeForest* v. *Jewett*, 88 id. 264; *Powers* v. *N. Y., L. E. & W. R. R. Co.*, 98 id. 278; *DeGraaf* v. *N. Y. C. & H. R. R. R. Co.*, 76 id. 125; Laws of 1886, chap. 409; Laws of 1887, chap. 462; *White* v. *W. L. Co.*, 134 N. Y. 631.)

*G. B. Wellington* for respondent. There is evidence to support the verdict. (*Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Hawley* v. *N. C. Co.*, 82 id. 372; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 466; *Gibson* v. *E. R. Co.*, 63 id. 449; *Kain* v. *Smith*, 89 id. 375; *Bullock* v. *Mayor, etc.*, 99 id. 654; *Palmer* v. *Dearing*, 93 id. 10.) There was evidence sufficient to warrant the jury to determine that his injuries were permanent. (*Kane* v. *N. Y., N. H. & H. R. R. Co.*, 132 N. Y. 160.)

EARL, J. In the night of June 13th, 1887, the plaintiff was in the employment of the defendant as a laborer, and while engaged in wheeling a load of slabs over an elevated platform into its boiler house on Breaker Island, he fell from the platform and was seriously injured, and this action was commenced by him on the 3d day of December, 1889, to recover for his injuries. The account he gives in his evidence of the accident which befell him is as follows: He had been at work for the defendant on the island about two months, and for about two

weeks had wheeled coal over the platform into the boiler room.   One of those weeks he worked in the day time and one in the night time, and he had commenced his night work in the third week.   He had wheeled coal all day on Sunday, June 12th, and between one and two o'clock on Monday morning the supply of coal was exhausted, and he, Sullivan, Keeler and other workmen were ordered by Mr. Stevenson, the night boss, to wheel slabs to the boiler room for fuel; and he and the others asked Stevenson to wait until daylight, as the platform was dangerous to work on when they could not see.   He nevertheless ordered them to proceed with the work of wheeling the slabs upon wheelbarrows.   The plaintiff loaded the slabs, which were about two yards long, crosswise upon his barrow.   The platform was made of two planks, each one foot wide, and ascended, so that it was fifteen feet high where he fell.   There were no guards on the sides of the platform, and no lights so that he could see ahead at the place where he fell.   There was a hole in the platform which he could not see on account of the darkness, and when the barrow struck that as he was wheeling the first load of slabs, it tipped over, the slabs struck against the door of the boiler room and he was thereby thrown off from the platform.   It was the hole in the platform which tipped over the barrow and caused the accident.   The hole had been there about two weeks, and he had frequently seen it, and had several times called the attention of Mr. Cooper, whom he styled the head boss, to it, saying to him that it was dangerous in rainy weather and slippery.   Other workmen had also called his attention to it, and he said he would see about it.   He gave no particular description of the hole when he was first examined.   But the plain inference is, that it was not there when the platform was built; it was not through the platform; it was a mere imperfection or depression, caused by the use of the platform.   Keeler had preceded him with a load of wood in safety.

This is the story of the plaintiff as to the cause and manner of the accident.   He called no witnesses whatever to confirm

it in any respect. As to the width of the platform and its height, and as to the lights and the hole, he is his only witness. There must have been numerous persons who knew the condition of the platform, if he told the truth about it, and yet he did not call one of them.

The defendant called several witnesses as to the condition and use of the platform, as follows: Martin Fay, who had been in the employ of the defendant for many years, a millwright and carpenter, built the platform, in the early part of May, 1887, of oak, spruce and pine, seven feet wide of seven plank. There was no defect in any of the planks, and the platform was built wide enough so that two men with barrows could use it at the same time, one going up and the other down, and there was plenty of room for them to pass each other. The door of the boiler room into which the men wheeled the slabs was four feet and six inches wide. The height of the platform at the lower end was six feet and six inches, and at the upper end at the boiler room, seven feet above the filling under it. He saw the platform and passed over it every day after it was built, and it was in good condition and there was no hole in it. There were pieces of scantling spiked on the sides of the platform to hang torches on. He saw the platform as late as eight o'clock in the evening before the accident, and it was well lighted so that one could see all around on both sides of it. The workmen had had no difficulty in working on this platform before.

Hugh Munroe, a foreman in the employ of the defendant, gave evidence in all essential respects confirming that of Fay. He assisted in building the platform, and said he knew there were seven planks three inches thick, and that it was seven feet wide. The morning after the accident, he and others examined the platform, and there was no defect or hole in any of the planks. The platform, at the time of the trial, was seven feet wide, and in that respect had never been changed since it was built.

Mr. Touceda, a civil engineer and chemist in the employ of the defendant, testified that the length of the platform was

eighty feet, and that it was eight feet high at the highest point, and that the boiler room door was four feet six inches wide.

Mr. Keeler, at the time of the accident one of the defendant's workmen, testified in substance that at that time he was working with the plaintiff wheeling wood over the platform; and when the plaintiff fell he was wheeling a load of wood about six feet behind him. They had been wheeling wood about an hour before the accident occurred. The slabs were four feet long. He loaded the slabs on his barrow lengthwise of the barrow, and wheeling until six o'clock in the morning he had no trouble on the platform, which consisted of seven planks, each ten or twelve inches wide. There were a good many men engaged in wheeling the wood, and they wheeled the loaded barrows up on one side of the platform and came down with empty barrows on the other side. There were lights hung on both sides of the platform, and there was plenty of light, so that the whole of the platform could be seen. · The plaintiff was close by the boiler room door when he fell, and the slabs were piled on his barrow crosswise. Either the wheels of the barrow or the slabs struck the side of the doorway, and thus caused the accident. He never discovered any hole in the plank, and there was none, and he never made any complaint of the hole or of the platform, or heard any one else make any. At the time he gave his evidence he was not in. defendant's employ, and had not been for two years.

Mr. Trowbridge worked for the defendant in 1887, and was night timekeeper. He was well acquainted with the platform, examined it and went back and forth upon it every night. There were seven planks side by side on the platform, which was seven feet wide, and in wheeling, men with loaded barrows would go up on one side, while men with empty barrows came down on the other side. From the time the platform was built to the time of the accident he saw it every night, and there was no change in its width, and it was safe and strong.

John Sullivan testified that he was working for the defend-

ant at the time of the accident; that he was wheeling coal and wood that night over the platform; that the platform was six or seven feet wide; that he made no complaint and heard no complaint by any one of the platform; that there was a depression worn by the barrows in one of the planks, of about one-quarter of an inch, which did not amount to anything, and did not cause any difficulty in the use of the platform; that the platform was about two feet wider than the door of the boiler room; that the platform was well lighted with torches, and that he could see plainly.

Thomas Stevenson, who was at the time in the employ of the defendant, and had charge of the men working at the time of the accident, testified that he was standing right by the boiler room door when the plaintiff fell; that the wood on the barrow hit the side of the door and caused him to fall; that his attention was never called to any defect in any plank, and he never discovered any; that no one made any objection to wheeling wood on any ground; that he is positive that the plaintiff had wheeled wood over the platform that night before the trip upon which he fell; that he told the men to pile the wood on the barrows lengthwise of the barrows and not crosswise; that the wood struck the side of the door because it was piled crosswise; that the platform remained just as it was originally built; that it was well lighted with torches which threw their light across the platform — perfectly light; that thirty torches were furnished and the men lighted as many as they wanted — not all of them; that he had not been in the employ of the defendant for the past three years.

Samuel Hurlburt testified that he knew the platform was built in the forepart of May, 1887, and that there never was any other platform there.

After the defendant had rested its case the plaintiff was re-called, and he described what he called the hole in the plank as follows: "It was a kind of split that was taken out of the plank — worn like; it was worn down in the plank; it was worn down like, a split; there was a kind of hole; it was worn down like a split that had gone

out. The hole did not go through the plank. It was about three feet from the boiler room;" and he reiterated his statement that there were but two planks, about a foot wide each, in the platform, and that there never were any torches lighted on the side of the platform.

There was no proof or claim that any accident had before happened upon this platform, although it had been used night and day for more than a month.

At the close of the evidence the defendant moved that the plaintiff be non-suited, on the grounds that there was not sufficient evidence of its negligence, and that he had not shown affirmatively his freedom from negligence, and the judge denied the motion.

The judge submitted the case to the jury for them to determine whether the defendant was chargeable with negligence on account of the alleged defect in the plank and the alleged absence of lights upon the platform, and the jury found for the plaintiff a verdict of one thousand dollars.

The defendant moved for a new trial upon the judge's minutes, and that motion was denied; and judgment having been entered, it appealed from the judgment, and also from the order denying the new trial to the General Term. The learned judge writing the opinion at the General Term, among other things, said :

" The plaintiff is his only witness as to the facts showing negligence on the part of the defendant, and is contradicted by a number of witnesses, and on examining the evidence I have entertained doubts whether the court ought not, under the circumstances, to have granted defendant's motion for a new trial on the ground that the verdict was against the weight of evidence.

" But the learned judge who presided at the trial of the case, who heard all the witnesses sworn, and who saw them when they gave their testimony, was of opinion that the evidence given justified the submission of the case on the question of negligence to the jury, and that such evidence was sufficient to sustain the verdict, and his view as to the evidence bearing on

the questions of fact involved in the case is entitled to great respect. It is only in exceptional cases that the decision of the judge presiding at the trial of an issue of fact in a case where there is conflicting evidence, on a motion for a new trial, will be disturbed by the court on appeal.  *  *  *

" As above stated, the cases are unusual where the General Term, on an appeal, there being a conflict of evidence and the case having been fairly tried and submitted to the jury, and a motion for a new trial having been denied by the trial judge, will grant a new trial because the number of witnesses on the part of the appellant on a question of fact exceeded the number of witnesses sworn on the part of the respondent."

If these views give what should be the correct practice in the General Term upon appeals from orders denying new trials, the right of appeal secured by the Code in such cases is of very little value. Here the plaintiff, testifying under the influence of self-interest, was the sole witness on his own behalf as to all the essential facts relating to the accident. He was confronted by numerous witnesses contradicting, in the most positive manner, all the material facts stated by him. There does not appear to be any possible chance of mistake. Either he or they testified falsely. They were disinterested, and were in no way responsible for the accident, and the evidence that they gave is in no way improbable. Indeed, their version seems to be more probable than that given by the defendant. The plaintiff waited more than two years and a half before he commenced his action, and then did not allege in his complaint the defect in the plank, now the main ground of complaint against the defendant. The plaintiff testified through an interpreter, and hence his manner of testifying and his appearance could not have been of much aid to the judge in weighing his evidence. If, under such circumstances, the General Term will refuse to grant a new trial, on the ground that the verdict is against the weight of evidence, it is difficult to conceive of any case where it ought to do so, and an appeal to it in such cases will be entirely useless. It is quite true that in some cases some deference may properly be

paid to the views of the trial judge who heard the witnesses testify, and those cases are where there is a fair conflict in the evidence; and while there is some, yet there is no great or marked preponderance in the evidence either way.   But where there is a vast preponderance in the evidence in favor of the defendant, and the defense is supported by numerous witnesses apparently entitled to credit, and the plaintiff's case stands upon his own evidence, either unsupported or slightly supported, the General Term should exercise an independent judgment and give the defendant appealing to it the full benefit which the law, by the right of appeal, intends he should have.   But where the court below refuses a new trial, in the exercise of its discretion, we have no jurisdiction to give relief, and if there be no error of law the defeated party is without remedy for any injustice he may suffer.

A careful scrutiny of this record satisfies us that the plaintiff as matter of law upon the undisputed evidence ought not to have recovered and should have been non-suited.

(1) If we assume that this platform was only two feet wide, the plaintiff knew it.   He had used the platform for two weeks, night and day, and wheeled his barrow up and down it many times.   If it was dangerous for use on that account, he knew it as well as any one, probably better than any of the defendant's officers.   He did not ask that it should be made wider, nor did he complain of the manner of its construction to any one.   Knowing exactly the condition of the platform and the risk of its use, and fully able to appreciate that risk, he voluntarily took the risk upon himself and exposed himself to the danger, and he cannot, therefore, maintain his recovery on the ground that the platform was not wide enough.   (*De Forest* v. *Jewett*, 88 N. Y. 264; *Powers* v. *N. Y., L. E. & W. R. R. Co.*, 98 id. 274; *White* v. *Wittemann, Lith. Co.*, 131 id. 631.)

(2) There was not such an imperfection in the plank as to sustain a charge of negligence against the defendant.   Only two witnesses saw the defect in the plank.   The plaintiff

described it as above.  According to his evidence it certainly was not a defect which would indicate to one of ordinary prudence the appearance of danger.  It was simply a depression in the plank caused by its use, and judging, as we must, by the description he gave of it, it was not a dangerous defect.  The witness Sullivan, the only witness who gave the depth of the depression, says it was only one-quarter of an inch and of no moment.  The depression was so small that it escaped the attention of the numerous other persons who used the platform, some of whom specially examined it.  It is impossible to say upon this evidence that there was the want of that ordinary care on the part of the defendant, in the maintenance of the platform, which can impose liability for the accident upon it, and a verdict based upon this imperfection should not be permitted to stand.  It is altogether improbable that this imperfection played any part in the accident.  It is a fair inference from the plaintiff's evidence that it was caused, as one of the defendant's witnesses testified, by the collision of the slabs laid crosswise upon the barrow with the side of the doorway.

(3) The only other ground of alleged negligence is the absence of lights at the platform.  All the witnesses but the plaintiff testified that it was amply lighted.  He had wheeled all the night until two o'clock A. M. without any difficulty.  But the answer to this ground of negligence is, that plenty of torches were furnished to the workmen for use in lighting the platform, and if they did not use them, and thus the platform was not sufficiently light, it was their own fault.  The defendant discharged its duty by furnishing sufficient torches, and if they were not used, or if they were not properly placed, the fault cannot be charged to it.

We are, therefore, of opinion that a new trial should be granted, costs to abide event.

All concur, except O'BRIEN and MAYNARD, JJ., dissenting, ANDREWS, Ch. J., not voting.

Judgment reversed.