FARRELL v. TATHAM et al.

(Supreme Court, Appellate Division, Second Department. January 10, 1899.)

MASTER AND SERVANT—ASSUMPTION OF RISK.

An employé who has worked in a shot tower for some months, and knows that some of the kettles for holding molten lead have no hoods on them, and that the lead splashes from such kettles, assumes the risk of injury resulting from such splashing.

Appeal from trial term, Kings county.

Action by Patrick Farrell against William P. Tatham and others. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Charles C. Nadal (Edward P. Mowton, on the brief), for appellants. Patrick Keady, for respondent.

WILLARD BARTLETT, J.　The plaintiff was injured in jumping from a platform to avoid the splashing of molten lead out of a kettle near which he was at work for the defendants, in their shot manufactory, in the city of New York.　This kettle had no hood over it.　There were 12 or 15 kettles, in all, in the establishment, of which 7 or 8 had hoods over them, if we may believe the testimony of one of the defendants, while nearly all were hooded, if the evidence in behalf of the plaintiff is correct.　According to this defendant, the hoods are put over the kettles solely to carry off the fumes which rise from the melting metal, while, according to the plaintiff's witnesses, the hoods are intended to serve the further purpose of preventing the lead from splashing out on the workmen.　The splashing which the plaintiff sought to escape when he was injured immediately followed the act of his foreman in putting a pig of lead into the molten metal, which already filled the kettle to three-fourths of its capacity.　The evidence does not show whether the impact of the solid lead against the liquid lead forced the latter out of the kettle, or whether the splashing was due to the presence of moisture upon the surface of the pig lead, which moisture was changed into steam by the heat in the kettle, although there is testimony which suggests the latter as the true explanation of the accident.　Whatever may have been the fact in this respect, the only ground which the proof discloses for charging the defendants with negligence is their failure to provide a hood for the kettle on the platform whence the plaintiff jumped.　While it was proved that the hoods did not wholly prevent the lead from splashing out, it is apparent that they must have afforded the workmen some protection.　The plaintiff, however, knew that there was no hood upon the kettle on the platform where he was at work.　He had been employed in the shot manufactory of the defendants for months.　He was thoroughly familiar with the process of lead melting as carried on there, and had repeatedly seen the lead splash out of this very kettle, as well as out of the hooded kettles.　He was aware of the danger, and exposed himself to it, with complete knowledge as to its presence and character, and, so far as appears, without complaint, objection, or remonstrance. It seems to us that the only inference fairly deducible from the evidence is that the plaintiff voluntarily assumed the risk of any injury which might happen to him from the splashing of molten lead out of the kettle in the manner in which it occurred when he was hurt, and, hence, that he ought to have been nonsuited on the trial.　Kaare v. Iron Co., 139 N. Y. 369, 34 N. E. 901.

This view compels us to reverse the judgment.

Judgment and order reversed, and new trial granted; costs to abide the event.　All concur.