### CARLSON v. MONITOR IRON WORKS.

(Supreme Court, Appellate Division, Second Department. February 7, 1899.)

INJURY TO SERVANT—DEFECTIVE MACHINERY—ASSUMED RISKS—MASTER'S LIA-
BILITY.

    Decedent had been employed for ten years in defendant's foundry, and for eight or nine days in the milling room; his duty being to unload castings from trucks, and place them in revolving tumblers for cleaning. The tumblers, which were revolved by gearing from behind, were secured, when closed, by a wooden wedge, which projected slightly, as did the flanges and rivet heads on the side, which projections were plainly visible. Deceased slipped while unloading pipe, was thrown against a revolving tumbler, caught between it and the shafting, and received injuries from which he died. *Held*, that such dangers were within the risks of the employment, which decedent assumed, and that defendant was not liable for his death.

Appeal from trial term, Westchester county.

Action by Anna Carlson, as administratrix of Franz Ludwig Carlson, deceased, against the Monitor Iron Works. From a judgment dismissing plaintiff's complaint, she appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Smith Lent, for appellant.

W. Popham Platt, for respondent.

GOODRICH, P. J. In March, 1897, the plaintiff's intestate, while working in the defendant's factory at Sing Sing, received injuries from which he died. This action was brought to recover damages for his death, and at the trial, upon the close of the plaintiff's evidence, the complaint was dismissed. From the judgment entered thereon, the plaintiff appeals.

Carlson, the intestate, had been employed for ten years as a molder's helper in the foundry of the defendant at Sing Sing. For eight or nine days before the accident which caused his death he had been transferred to work in connection with the milling room, the place of the accident. In this room there were five mills or tumblers, in a continuous line, into which "sprews," or pipe castings, as they came from casting, were placed for cleaning purposes. Each tumbler was about five feet in length and four in diameter, and was fitted with folding doors on the side, one part opening up and the other down, which when closed were fastened with an iron strap or hasp, and a wooden wedge to hold them securely. The wedge projected an inch or an inch and a half. There were also flanges and rivet heads on the side, projecting

an inch or two from the staves or body of the tumblers. The latter were used to clean the pipes by attrition, and were made to revolve on an axis by shafting and wheels placed behind them. In front of them, and about two or three feet distant, was a railroad track, running parallel with the line of the tumblers, and used for trucks upon which the pipe castings were brought to the tumblers. It was a part of Carlson's duty to unload the pipes, put them in the tumblers, and fasten the doors. While in the act of lifting a pipe from a truck, Carlson slipped or stumbled, was thrown against one of the tumblers, which was revolving, was caught in some way, and thrown over it, and wedged in between it and the shafting on the other side, and thus received the injuries which resulted in his death. There was evidence that about two years before this accident the clothing of another person was caught in some part of a tumbler, and that he was thrown over it upon the shafting, and that the clothing, also, of other workmen had been caught on projections of the tumblers. There was also evidence to show that these flanges, rivets, and wedges were "obvious to anybody's sight." The defendant moved to dismiss the complaint upon the ground that Carlson had been in the foundry for many years, and was familiar with the machinery, and that whatever risks there were were obvious to him, and that he assumed these risks in his employment. The court granted the motion over the plaintiff's exception.

It is decided by a long line of cases that, where a servant enters upon employment, he assumes the usual risks and perils of the service, and also those risks and perils incident to the use of machinery which are apparent to ordinary observation, and that he cannot call upon the master to make alterations to secure greater safety, or, in case of injury, call upon him for indemnity. Gibson v. Railway Co., 63 N. Y. 449; De Forest v. Jewett, 88 N. Y. 264; Appel v. Railroad Co., 111 N. Y. 550, 19 N. E. 93; Kaare v. Iron Co., 139 N. Y. 369, 34 N. E. 901; Knisley v. Pratt, 146 N. Y. 372, 42 N. E. 986. In the last case it was also held that the servant, by entering upon the service with a full knowledge of the facts, waived, under the common-law doctrine of obvious risks, the performance by the master of the duty to furnish the special protection required by the factory act of 1890. Kaare v. Iron Co., supra, is perhaps the most explicit authority for the dismissal of the complaint upon the facts in this case; and it was cited and followed by this court in Farrell v. Tathan (decided at the January term) 55 N. Y. Supp. 199, where (Mr. Justice Willard Bartlett writing) we affirmed the general doctrine that where a person was aware of the danger, and exposed himself to it with complete knowledge of its character, and without objection or remonstrance, he voluntarily assumed the risk of injury from apparent dangers. This case falls within that principle.

The complaint was properly dismissed, and the judgment must be affirmed.

Judgment affirmed, with costs. All concur.