BLACK v. SECOND AVE. R. CO.

(Supreme Court, Appellate Division, First Department. November 10, 1899.)

STREET RAILWAY—INJURY TO PASSENGER—EVIDENCE.

Verdict for plaintiff in an action against a street railway for injury received in alighting from a car should be set aside as against the weight of evidence, plaintiff testifying that, when the car had passed beyond the further side of the street crossing, it came to a stop, and while he was in the act of alighting, and had one foot on the ground, it suddenly started, and threw him, he being corroborated in no respect except by one witness, who showed that at best he had little knowledge of how the accident occurred, and who, in many respects, contradicted plaintiff; and six disinterested witnesses testifying that the car had not reached the further side of the street when the accident occurred; and the driver and another testifying that he told plaintiff to wait till the car came to a full stop, and that it would stop on the further side, and that, while it was still moving, plaintiff stepped or slipped from it.

Rumsey and Ingraham, JJ., dissenting.

Appeal from trial term, New York county.

Action by Rasmus Black against the Second Avenue Railroad Company. From a judgment for plaintiff, and an order denying motion for new trial on the minutes, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Edward D. O'Brien, for appellant.
J. Brownson Ker, for respondent.

McLAUGHLIN, J. The plaintiff, a carpenter, 36 years of age, on the 14th of April, 1897, between 10 and 11 o'clock in the forenoon, boarded one of the defendant's north-bound cars at Thirtieth street and Second avenue to go to Sixty-Eighth street. He had with him at the time a tool chest, weighing 50 pounds or more, which, when he boarded the car, he was directed by the conductor to take to the front platform. This he did, remaining with it until the car approached the Sixty-Eighth street crossing, when, in attempting to alight from the car, he either fell or was thrown from it to the street, and sustained the injuries of which he complains. He had a verdict, and from the judgment entered thereon, and from an order denying a motion for a new trial on the minutes, the defendant has appealed.

Having reached the conclusion that the judgment must be reversed on the ground that it is against the weight of evidence, it is proper to refer somewhat in detail to the testimony of the different witnesses sworn upon the trial. The plaintiff testified that when the car was between Sixty-Seventh and Sixty-Eighth streets he requested the driver to stop at the latter street, and that, after the car had passed about five feet beyond the north crossing of Sixty-Eighth street, it came to a full stop; that he then took his tool chest, and attempted to alight, and, while he was in the act of so doing, with one foot on the ground and the other on the step of the car, it was suddenly, without any warning to him, started, by reason of which he was thrown to the street, and injured. Only one witness (Morris Jacobs) was sworn to corroborate the plaintiff as to how the accident occurred,

and, while he corroborates him in some respects, he also contradicts him in others. A careful consideration of the testimony of the witness Jacobs has satisfied us that he either did not see the accident at all, or else had so little knowledge of how it occurred that he was unable to give an intelligent statement of it. In fact, he admitted that he did not "see much of it," but that he did remember seeing the plaintiff hanging on to the dashboard of the car with one hand, and that "one leg was on the step of the car and the other one not on the ground, and he was thrown over by the car moving just a few feet." In opposition to this testimony, the defendant swore six disinterested witnesses, all of whom testified in direct opposition to the plaintiff and his witness as to the location of the car at the time the accident occurred, and two of them in direct opposition to the plaintiff as to what took place at or immediately preceding his injury. Hession, the driver of the car, who, at the time of the trial, was not, and for nearly two years prior thereto had not been, in the employ of the defendant, testified: That when the car was between Sixty-Seventh and Sixty-Eighth streets the plaintiff said to him, "I want to get off," and at the same time he commenced to pick up his box. "I said, 'You hold on until this car comes to a full stop; I will stop on the other side for you.'" That he then commenced to put on the brake for the purpose of stopping the car, and, as its speed was slackened, the plaintiff stepped or slipped from it, and fell. That he then stopped the car as soon as he could, and when it came to a full stop it was several feet south of the north crossing of Sixty-Eighth street. This witness also testified that there was then standing on the front platform of the car with him one Dr. Fridler, who saw the accident, and knew how it occurred. Dr. Fridler was produced, and he testified that he was at the time on the front platform of the car; that when near Sixty-Eighth street the plaintiff told the driver he wanted to get off at that street; that the driver commenced to check the speed of the car, and, as he did so, "the man got his box with his arm, and the driver told him the car would be at a standstill when it got to the crossing; that the car was in motion, and all at once the man slipped backward"; that the car, when it came to a standstill, was south of the crossing; that he examined the plaintiff, and he was not seriously injured. Scott, the conductor of the car, who was not at the time of the trial in the employ of the defendant, testified that he was on the rear platform of the car; that his attention was attracted by the fact that the car had suddenly come to a stop between the crossings, which was an unusual thing; that he thereupon got off the car, and saw the plaintiff lying in the street; that the car then was south of the crossing, which fact he called to the attention of a police officer by the name of Waddell. The police officer Waddell was produced, and testified that his attention was called to the accident, that he saw the plaintiff when he was helped to his feet, and that the car was then south of the north crossing of Sixty-Eighth street. Two other witnesses, who at the time were passengers on the car, testified that when the car came to a full stop it had not passed the north crossing of Sixty-Eighth street. When the testimony is thus considered, and that of the plaintiff contrasted with that of the defendant, it at

once becomes manifest that the jury could not have reached the conclusion which they did from a fair consideration of it, and that their verdict is not based upon the evidence, but is rather the expression of passion, prejudice, or mistake. The location of the car at the precise time the plaintiff fell was a vital issue in the case. If it had not then reached the north crossing of Sixty-Eighth street, the usual place for north-bound cars to stop, and where the plaintiff had been told this car would stop, then the plaintiff, under his own proof, and under the allegations of the complaint, was not entitled to recover. As to this, as we have already seen, we have six disinterested witnesses, all testifying to the fact that when the accident occurred the car was south of the north crossing of Sixty-Eighth street, and this testimony was met by what? By the testimony of the plaintiff him-self,—one testifying under the influence of self-interest,—and of one other witness, whose testimony in many respects tends to contradict the plaintiff as much as it does to support him. Under such circumstances the duty of the court seems clear, and that is to set aside the verdict, and order a new trial. It is true, the verdict of a jury is entitled to great respect, and ought not to be lightly interfered with; but when the court can see—as it can in this case—that injustice has likely been done to one of the parties, then it never hesitates to set aside a verdict, and direct that the issues involved be resubmitted to another jury. Kaare v. Iron Co., 139 N. Y. 369, 34 N. E. 901.

The judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and BARRETT, J., concur. RUMSEY and INGRAHAM, JJ., dissent.