ARTHUR S. WILLDIGG, as Administrator, etc., of EDWARD MOORING, Deceased, Respondent, *v.* EDWARD M. KNOX, Appellant.

*Master and servant — injury to a servant who attempts to descend into a cistern by a ladder beginning some two feet below its edge — when he assumes the risks incident to there being no guardrail and of insufficient light.*

A servant who enters upon an employment, from its nature hazardous, assumes the usual risks and perils of the service and of the open, visible structures known to him or which must have been known had he exercised ordinary care and observation.

Upon the trial of an action to recover damages resulting from the death of the plaintiff's intestate while in the employ of the defendant, it appeared that about noon on the day of the accident the defendant instructed the intestate to procure lanterns and be prepared to clean a cistern out in the evening. The intestate was to receive extra pay for the work and was at liberty to engage in it or not as he wished. The mouth of the cistern was between two and one-half and three feet in diameter and, securely fastened to one of its walls, was an iron ladder which extended from the bottom of the cistern to a point within from eighteen to twenty-four inches from the mouth. There was no guard or handrail around the mouth of the cistern, and the only way in which a person could descend into it was to kneel, with one knee on the edge of the mouth of the cistern, and ascertain the location of the ladder by extending the foot of the other leg into the cistern. During the afternoon the intestate descended, at least twice, into the cistern for the purpose of preparing for the evening's work. At about seven o'clock in the evening he went to the cistern accompanied by two laborers who had been employed to assist him. The only light around the cistern was furnished by a lantern carried by the intestate.

The intestate then attempted to descend into the cistern, put one foot down into it and fell down and shortly afterward was found dead at the bottom thereof.

*Held*, that the intestate voluntarily assumed the risks incident to the absence of a guard or handrail at the mouth of the cistern and of the insufficient light, and that the defendant was not liable for the damages resulting from his death.

APPEAL by the defendant, Edward M. Knox, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 13th day of June, 1902, upon the verdict of a jury for $500, and also from an order entered in said clerk's office on the 13th day of June, 1902, denying the defendant's motion for a new trial made upon the minutes.

*Perry D. Trafford* and *Gerald Hull Gray*, for the appellant.

*Robert B. Austin*, for the respondent.

HOOKER, J. :

The plaintiff had a recovery at the Trial Term for damages, on account of the death of his intestate brought about by the alleged negligence of the defendant. The judgment must, however, be reversed for the reason that the intestate assumed the risk of the employment in which he was engaged at the time he met his death.

The Court of Appeals has laid down the rule as follows: " A servant who enters upon an employment, from its nature hazardous, assumes the usual risks and perils of the service, and of the open, visible structures known to him, or which he must have known, had he exercised ordinary care and observation." ( *Williams* v. *D., L. & W. R. R. Co.*, 116 N. Y. 628 ; *Appel* v. *B., N. Y. & P. R. Co.*, 111 id. 550.) This language must be considered applicable to the facts in this case. The complaint alleged that the defendant required the deceased, Edward Mooring, to leave his regular employment and to clean out a cistern, and failed to provide a guard or handrail around the mouth of the cistern, and neglected to furnish or provide sufficient lights for the performance of this work which was undertaken in the night time. The evidence shows that the mouth of the cistern was between two and one-half and three feet in diameter; that securely fastened to one of its walls was an iron ladder a few inches out from the wall and extending from the bottom of the cistern to a point within from eighteen to twenty-four inches from the mouth. The

cistern needed cleaning, and the deceased was instructed about noon to get lanterns and be prepared to clean the cistern out in the evening. He was to receive extra pay for this work, and was at liberty to engage in it or not, as he wished. During the course of the afternoon it is undisputed that he descended into the cistern at least twice for the purpose of making observations as to the depth of the water then being pumped out, and as to other details, that in the evening he might accomplish his work properly. During the afternoon he procured two or three lanterns from a neighboring establishment to use in connection with the rather meagre supply upon the premises of the defendant. Three or four men were assigned to help him in the work of cleaning out the cistern, and he was their foreman or boss, and had complete charge of the undertaking.

About seven o'clock in the evening of November 20, 1899, in company with two Italian laborers who had been provided for him, he approached the mouth of the cistern. No railing of any sort was provided at the opening, and the only light shed upon the scene was that from the lanterns he had secured. The evidence is somewhat conflicting as to the number of lanterns which shed their light upon this opening. One of the Italians, sworn for the plaintiff, says that the only light around the cistern was the lantern carried by the deceased when he met with the accident; and one of the witnesses for the defendant, who was not present at the time the accident occurred, but who ran up within a moment or two, says that another lantern stood near the mouth, so that its rays were shining into the cistern. The only eye-witness who was sworn describes the occurrence in this manner : " He (the deceased) tried to get down, put one foot down the cistern and fell down. There was one light in the cistern, the Englishman (deceased) had that. There was only one around the cistern. He was holding the lantern himself. That was all there was. I presume he did not put his foot on the ladder right and he fell down. The lantern did not go out before he fell. As he fell down he fell with the lantern, and went down that way. * * * I know the condition of the ladder, it was not slippery. * * * He put one foot down and fell down. * * * He put his foot down and fell in, that is all I know." Assistance was summoned immediately after the deceased fell, and another witness descending found the intestate dead on the bottom of the cistern.

It seems from the evidence that the top of the ladder in question was directly under one point of the circumference of the circular mouth of the hole, and the usual manner of descending is described in this way : " They had to get over this way, put the foot out that way, and hold on to the top of the sides of the cistern till they got down low enough, till they caught hold of the rung of the ladder."

The questions of negligence of the defendant in not providing a railing or some other appliance to which the intestate might have clung until he was safely upon the ladder, and in failing to provide sufficient light, together with the question of the intestate's contributory negligence, were submitted by the court to the jury, and they rendered a verdict in favor of the plaintiff.

At the close of plaintiff's case, and again at the close of the evidence, the defendant moved for the dismissal of the complaint on the ground, among others, " that the proof shows that the risks, if any, were known to and were directly assumed by the deceased." The motion was denied, and the defendant's exception presents that question to this court. We think that the learned trial judge erred in his refusal to grant this motion. To descend into this cistern, even in the daytime, was a hazardous undertaking, and its danger was enhanced if the effort was made at night, unless the place was brightly lighted. The top of the ladder was between eighteen inches and two feet from the surface of the ground, and the only possible way for a person to descend was to kneel down on the edge of the mouth of the cistern upon one knee and extend the foot of the other leg toward the first rung of the ladder, and proceed in this manner. One descending in this position could not see the ladder, and must feel with his foot to ascertain its location. A false step upon the ladder, a slipping of the knee, or a loss of balance when accommodating oneself to his new footing on the rung, would each produce disastrous results, and common reason would dictate that the undertaking was dangerous. The intestate must have had a full and complete understanding in relation to all the dangers surrounding the undertaking, for he descended into the cistern twice during the course of the afternoon for the purpose of preparing for cleaning out the cistern in the evening and, it is fair to assume, for the purpose of acquainting himself with the physical

conditions. On account of his descents in daylight it must have been clear to him that in attempting to go upon the ladder the chief danger was in properly locating it, and light was essential here. Disregarding, however, the clear necessity of the case after dark he sent two lanterns out to the sidewalk, many yards away, and, acccording to the evidence of the plaintiff, attempted to descend the ladder assisted by the light from but one lantern, and the evidence shows without dispute that he himself held the lantern. We think that the language of Judge EARL in *Kaare* v. *T. S. & I. Co.* (139 N. Y. 369, 377) may be adopted with unusual force in this case. There an employee engaged in the night time in wheeling a load upon a wheelbarrow up an elevated platform two feet wide, unlighted and without guards, fell therefrom and was injured. The court said : " A careful scrutiny of this record satisfies us that the plaintiff as matter of law upon the undisputed evidence ought not to have recovered and should have been nonsuited. If we assume that this platform was only two feet wide, the plaintiff knew it. He had used the platform for two weeks, night and day, and wheeled his barrow up and down it many times. If it was dangerous for use on that account, he knew it as well as any one, probably better than any of the defendant's officers. He did not ask that it should be made wider, nor did he complain of the manner of its construction to any one. Knowing exactly the condition of the platform and the risk of its use, and fully able to appreciate that risk, he voluntarily took the risk upon himself and exposed himself to the danger, and he cannot, therefore, maintain his recovery on the ground that the platform was not wide enough. (*De Forest* v. *Jewett*, 88 N. Y. 264; *Powers* v. *N. Y., L. E. & W. R. R. Co.*, 98 id. 274; *White* v. *Wittemann Lith. Co.*, 131 id. 631.) "

We believe that the rule adopted by the Court of Appeals in that case is applicable to the facts disclosed by the record here. The intestate knew the physical condition and the relation between the ladder and the mouth of the cistern ; he had used the ladder on at least two occasions during the afternoon; if it was dangerous for use on account of the absence of a guard or handrail, or on account of darkness, he knew those conditions as well as any one ; he did not ask that any appliance be attached which he could clutch in descending, nor did he complain of the paucity of light. He appre-

ciated the risk and voluntarily exposed himself to the danger, and should not have prevailed upon defendant's motion to dismiss.

The judgment and order appealed from should be reversed and new trial granted, costs to abide the event.

BARTLETT, WOODWARD, HIRSCHBERG and JENKS, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.