CHARLES TROTCKY, an Infant, by SAMUEL M. TROTCKY, his Guardian ad litem, Respondent, *v.* THE FORTY-SECOND STREET AND GRAND STREET FERRY RAILROAD COMPANY, Appellant.

*Determination of the weight of evidence by the General Term — negligence — a child injured by a street horse car.*

The court does not set aside verdicts because the unsuccessful party produced the greater number of witnesses on the vital issue; but when, in addition to numbers, the testimony of the witnesses is of such a character as to render the truth of their statements highly probable, and more probable than the evidence of the witnesses of the successful party, the General Term must discharge the duty imposed on it by the statute, and determine for itself whether the issues have been determined against the weight of evidence.

In an action brought to recover damages from a street railroad company for an injury to a boy two years and three months old, who, in running across the street, was struck by one of the defendant's horse cars, the plaintiff claimed that the injury was caused by the negligence of the driver of the car, and sought to establish the fact that he was negligent, (1) in that he was sitting instead of standing; (2) that the car was moving at an excessive rate of speed, and (3) that the driver did not promptly apply the brake. The plaintiff recovered a verdict.

*Held*, that on the whole case the verdict was greatly against the weight of evidence, and that, by evidence which greatly outweighed the plaintiff's, the defendant showed that its driver did not commit any one of the acts which the plaintiff sought to establish as a ground of recovery; and, hence, that a new trial should be granted.

APPEAL by the defendant, the Forty-Second Street and Grand Street Ferry Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 23d day of January, 1893,

upon a verdict rendered at the New York Circuit, with notice of an intention to bring up for review on such an appeal an order entered on the same day denying the defendant's motion for a new trial made upon the minutes.

*Freling H. Smith,* for the appellant.

*Christopher Fine,* for the respondent.

FOLLETT, J.:

This action is for the recovery of damages for a personal injury caused, as it is alleged, by the negligence of the defendant's employees. On the 17th of July, 1891, between eleven and twelve o'clock A. M., the plaintiff, then but two years and three months old, was run over by one of defendant's horse cars, and suffered the loss of his right arm. The plaintiff resided with his parents on the third floor of No. 579 Grand street. His maternal grandmother occupied the ground floor of this number as a cigar store. At about eleven o'clock of the day of the accident the plaintiff's mother took him down stairs and left him in the care of his grandmother. No. 579 is on the south side of Grand street and a little east of where Goerck street intersects Grand. The child saw an ice wagon on the north side of the street, and expressing a desire for a piece of ice, his grandmother permitted him to cross the street in company with a boy by the name of Kelly, who was then about nine years of age. After the child had received a piece of ice he started to recross Grand street and was run over by defendant's open car No. 83.

The foregoing facts are not disputed. The evidence given in behalf of the plaintiff does not tend to charge any of the defendant's employees with any negligent act which contributed to the accident, except the driver of car No. 83, and it is sought to establish that he was negligent in the following particulars: (1) That he was sitting instead of standing, for which reason he was unable to see the child on the track as early as though he had been standing. (2) That the car was moving at an excessive rate of speed. (3) That the driver did not promptly apply the brakes. To establish these propositions three witnesses were called in behalf of the plaintiff. His grandmother, Fannie Friedman, testified that the child left her store in company with the Kelly boy to cross the street for a piece of ice,

and that after securing it, he and the Kelly boy started to recross the street together, and while crossing the child fell on the south track, and the Kelly boy left him. She testified that the driver of No. 83 was sitting down and that the car went very fast.

Bernard Price and Hirsch Friedman testified that they were walking together from the ferry west on the north side of Grand street and that they saw the child lying on the south track; that the driver of car No. 83 was sitting, and that he did not apply the brake until the car was very near the child, and that the car was running very fast. Both testified to substantially the same state of facts. On the cross-examination both said that they could not say that the car was going as fast as at the rate of five miles an hour. This was substantially all of the evidence given in behalf of the plaintiff descriptive of the accident or of its cause.

Patrick Glynn, the driver of car No. 83, testified that he was standing with the lines in his left hand, with his right hand on the brake; that the car was traveling east towards the ferry on the south track at the rate of about six miles an hour, and that as he approached Goerck street, a yellow car, No. 13, of the Cortlandt street line, approached from the east going west on the north track. That the child was crossing the street from the north to the south and ran in front of the horses drawing No. 13 and between the whiffletree and dashboard of No. 83 and fell under it.

James Gettings, the driver of No. 13, testified that as his car approached Goerck street he saw this child standing on the northwest corner of Goerck and Grand; that he suddenly started and ran diagonally across the street in front of his horses; that he called to the driver of No. 83, but the boy ran against the whiffletree of No. 83 and fell under it. He testified that No. 83 was going at about the rate of six miles an hour; that its driver was standing; that he applied the brake and stopped the car within eight or ten feet.

Ellen Miller testified that she was riding on car No. 83; that the child ran in front of the horses drawing car No. 13 and against the one on which she was riding.

Annie Eldredge testified that she was riding on the north end of the second or third seat from the front on car No. 83; that the driver was standing, and that the car stopped very suddenly, but that she did not see the child before it was run over.

Fannie Merrick, a sister of the last witness, testified that she sat by the side of her sister; that she did not see the child until after the accident; that the car stopped suddenly, and that the driver was standing.

Rebecca Willis testified that she was riding on car No. 83 at the time of the accident; that it was not going very fast, was stopped very quickly and that the driver was standing, but that she did not see the child before the accident.

Mary E. Lowery testified that she lived on the top floor of No. 581 Grand street next east of the building in which the plaintiff's parents resided; that she was looking out of the window and saw the accident; that the Kelly boy and the child went to the ice wagon; that the Kelly boy went onto the wagon and handed the child a piece of ice, after which he started to cross the street alone, and that he fell between car No. 83 and its horses; that he ran in front of the horses of No. 13 and into No. 83; that the cars were not moving very fast, and that the driver of No. 83 was standing up with his hand on the brake.

Julia Murphy testified that she was looking out of the window of No. 581 with her sister, the last witness; that she saw the child run in front of the horses of No. 13, and that he fell between No. 83 and its horses; that she saw the Kelly boy go up to the ice wagon and hand the child a piece of ice, after which he started to cross the street alone; that the driver was standing with one hand on the brake.

Mamie Pitt testified that she was looking out of the window with the last two witnesses; that she saw the Kelly boy hand the child a piece of ice, and that he then started to cross the street alone, and that he ran in front of the horses of No. 13 and between No. 83 and the horses attached to it.

Dennis Conway, the conductor of No. 83, testified that the car was not running over six miles an hour; that as it approached Goerck street he heard the driver of No. 13 shout, but he did not see the child until after the accident, and that his driver was standing up.

Albert E. Truman testified that he was standing on the fire escape of No. 408 Madison street; that he saw the child start to run across the street towards his home; that he ran in front of the horses of

No. 13 and against the whiffletree of No. 83, the driver of which was standing with the lines in one hand and the brake in the other; that he saw the driver apply the brake as fast as he could, and that the car was stopped within a short distance.

William Truman, father of the last witness, testified that he was on the fire escape with his son and saw the accident; that the driver of No. 83 was standing up with the lines in one hand and the brake wheel in the other; that the child ran in front of the horses of No. 13, five or six yards in advance of them, and into No. 83.

Antonio Marrone testified that he saw the accident; that the child started to cross the street and ran between the hind legs of the horses and the dashboard of car No. 83.

John Bovaird testified that he saw the accident; that he heard somebody call, and saw the boy run in front of No. 13 and into No. 83, the driver of which was standing with one hand on the brake and holding the lines with his other hand.

Joseph Welsh testified that he saw the boy run in front of No. 13 and into No. 83, between its dashboard and whiffletree; that its driver was standing with the lines in one hand and the other on the brake; that both cars were going at about six miles an hour, and that the child was alone.

James Kelly, who is said to have accompanied the child across the street, was not sworn. At the close of the plaintiff's evidence this statement appears: " I tender to the other side, if they choose to examine him, the boy James Kelly. He is in court. I am free to say to the court that I put him on the stand once, and don't believe he understands the nature of an oath, or is sufficiently intelligent to give testimony, and that is the reason I don't call him, but he is here if the other side desire to examine him."

The grandmother testified : " I had known this boy Kelly at that time half a year. The Kelly boy at that time boarded with his aunt in Mangin street, not a block from where I live. The Kelly boy had been round there before when Charlie was there; he comes there every day and plays with the child."

It is insisted by the defendant's counsel that the grandmother was negligent in placing the child in the care of this unintelligent boy, with whom she must have been so well acquainted. How much intelligence he had does not clearly appear, and as the view which

we take of this case leads to a new trial, it may be that on the next trial it will be shown whether the Kelly boy was a proper custodian of this child.

A verdict of $15,000 damages was rendered. It seems to us that on the whole case the verdict is greatly against the weight of evidence, and further, that, by evidence which greatly outweighs the plaintiff's, the defendant shows that its driver did not commit any one of the acts which the plaintiff sought to establish as a ground of recovery. There is no reliable evidence tending to show that the car was moving at more than six miles per hour, and it is not asserted that this rate of speed, at this time and place, was excessive or negligent.

Many witnesses who were so situated that they must have known what the fact was, testified that the driver was not sitting, but was standing, and it seems to us that this issue was determined against the preponderance of the evidence, as was also the issue whether the brake was promptly and efficiently applied.

The court does not set aside verdicts because the unsuccessful party produced the greatest number of witnesses on the vital issue, but when, in addition to numbers, the testimony of the witnesses is of such a character as to render the truth of their statements highly probable, and more probable than the evidence of the witnesses of the successful party, this court must discharge the duty imposed on it by the statute, and determine for itself whether the issues have been determined against the weight of evidence.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

Parker, J., concurred.

Van Brunt, P. J.:

I think that the evidence shows conclusively that the witnesses upon the part of the plaintiff testified falsely, in order to make out negligence upon the part of the defendant.

Judgment reversed and new trial granted, with costs to the appellant to abide the event.