(31 Misc. Rep. 506.)

## BOLOGNA v. METROPOLITAN ST. RY. CO.

(City Court of New York, General Term.  May 1, 1900.)

NEW TRIAL—WEIGHT OF EVIDENCE—REVIEW.

A verdict in favor of plaintiff in an action for injuries will be set aside· as against the weight of the evidence where the verdict is supported only by the testimony of plaintiff and another, and is opposed to the theory of the accident presented by defendant, and supported by the consistent testimony of several disinterested witnesses.

Appeal from trial term.

Action by Anthony Bologna against the Metropolitan Street-Railway Company.  From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals.  Reversed.

Argued before FITZSIMONS, C. J., and CONLAN and O'DWYER,. JJ.

Robinson & Little, for appellant.
M. P. O'Connor, for respondent.

O'DWYER, J.  The plaintiff was driving up Central Park West,. between Eighty-First and Eighty-Second streets, when he was struck by one of the defendant's cars, sustaining the injuries which form the basis of this cause of action.  The plaintiff testified:

"I got about the middle of the block, where there was some sewering or· gas fixing going on, so that one-half of the street right near the sidewalk was blocked up with it.  *  *  *  There was only room for one wagon to· pass there.  I was trying to get past and get beyond, and I saw a big truck coming down, and I saw I could not get out, so I tried to get back upon the· uptown track.  I observed the car coming downtown.  That car was then on the other side of the corner of Eighty-Second street, and was about 100 feet away from me; that is, when I first started to cross the track.  *  *  *  The· head of the horse was upon the first rail upon the downtown track, and while· the horse was between the two tracks the car was about 25 feet away.  The· horse had got across upon the uptown track, across the downtown track. *  *  *  I had the front part of the wagon almost out as the car was coming at its full speed, and he hit the hind wheel, and the wagon was swung around, and I was thrown off the wagon upon the street, my head and my forehead· striking the street."

The plaintiff called one witness,—Nicholas Sherman,—who owned the wagon which the plaintiff was driving.  He testified to the same facts as the plaintiff.  The plaintiff called no other witnesses.  His· case is made up of the testimony of himself and Sherman.  The defendant's theory of the accident is entirely different.  The crew of the· car and four disinterested witnesses were called to show that the accident occurred in an entirely different manner.  The conductor testified:

"I was standing on the rear end of the car, and I first saw the wagon upon. the up track.  He was partly over between the up and the down track.  I noticed him as I came pretty close to him.  *  *  *  I noticed the driver· looking over as to see how close he was, and, as he reached near the rear end of the car, a little back of the center, the hub of the wheel of the wagon seemed to catch the side of the car, and the jolt of the wagon against the car· caused him to drop off between the car and the wagon.  The front part of his· wagon had got past the car, and after it had passed it hit my car,—as it.

passed it hit my car. That is all I saw of that accident. I stopped my car."

### Edwin C. Greear, the motorman, testified:

"We were upon the south-bound track, and this wagon was going up on the north-bound track. I paid no attention to it until after the plaintiff had passed the front of the car, when I got three bells to stop the car."

### William Reynolds was driving on the street. He testified:

"I saw the plaintiff's wagon upon the same track ahead of me. I was driving right behind him then. I was 50 feet behind him. There was nobody between me and him. * * * I was driving up Eighth avenue, and I noticed this wagon ahead of me. He was upon the same track as I was, and I saw a car coming down, and noticed the car passed this wagon, and I noticed this man fall off the wagon, but I did not know what part of that wagon struck the car. I saw the front wheels of the car pass the wagon."

### George W. Smith, a passenger on the car, testified:

"I was sitting in that car about the fourth seat in the front, and upon the east side. I was sitting against the guard rail. The step on that side of the car was turned up, and it attracted my particular notice. I know that the front part of the car had passed this peddler's wagon before I heard the jolt. I heard the jolt as the wheel of the wagon struck that running board of the car, and I jumped out of the way, fearing that the wagon would strike me, after which I slid under the guard rail, and got off, after which the car came to a stop; that is, after it had gone a short distance."

### George F. Groff, a passenger on the car, testified:

"I was a passenger on this car when this accident happened. I think I did not give my name to the conductor or to the inspector of that company on the occasion of the accident, but I sent a letter to the president, Mr. Vreeland, after the accident, because I understood that the motorman would be arrested. I was sitting in the fourth seat back from the front of the car. To the best of my recollection the car was upon the downtown track, and the wagon was upon the up track. For some reason the head of the plaintiff's wagon wheel struck directly under the seat upon which I was sitting, and this was four or five seats back from the motorman."

### Daniel Ryan, a police officer, who had been on the force eight years, was a passenger on the car. He testified:

"I was upon the third seat rear, and I noticed this wagon coming up upon the east track. It passed Eighty-First street while the car was going south and the wagon was going north, and I saw the front part of the car pass the wagon, while the driver of the wagon, instead of pulling the off line, pulled upon the nigh line, and the consequence was that his wagon struck the car at about the middle of the car."

These witnesses, four of whom were disinterested, testified to a plain, consistent state of facts which exonerates the defendant from blame. Goldschmidt v. Railway Co., 1 App. Div. 309, 37 N. Y. Supp. 299; Bello v. Same, 2 App. Div. 313, 37 N. Y. Supp. 969; Reynolds v. Railroad Co., 20 App. Div. 339, 46 N. Y. Supp. 763; McDonald v. Railway Co. (Sup.; not yet officially reported) 61 N. Y. Supp. 817; Steuer v. Same, Id. 1059; Trotcky v. Railroad Co., 73 Hun, 26, 25 N. Y. Supp. 1054; Kaare v. Iron Co., 139 N. Y. 369, 34 N. E. 901; Pierce v. Railway Co., 21 App. Div. 427, 47 N. Y. Supp. 540; Fick v. Same, 26 App. Div. 84, 49 N. Y. Supp. 693. All of these cases recognize and apply the rule that, where the plaintiff's case is overborne by the weight of evidence, a verdict in his favor will not stand.

Notwithstanding that in each of these cases there was evidence, which, if believed, would have justified a verdict in favor of the plaintiff, the appellate divison in this department and in the Second department and the court of appeals have held consistently that, where the defendant produced clear, concise, and rational theory opposed to the theory presented by the plaintiff, and supported the theory by the evidence of numerous disinterested witnesses, justice required that the appellate court exercise its jurisdiction to review the verdict, and set it aside as against the weight of evidence. Upon the whole testimony we are satisfied that the verdict was against the weight of evidence, and the ends of justice will be subserved by the submission of the case to another jury.

The judgment appealed from and the order denying a new trial must be reversed, and a new trial granted, upon condition that the defendant pay to the plaintiff a trial fee and disbursements of the former trial; the appellant to have costs of this appeal to abide the event of the action. All concur.