CHARLES A. WHITE, as Administrator, etc., of DOLLY WILHELM, Deceased, Respondent, *v.* LEHIGH VALLEY RAILROAD COMPANY, Appellant.

Fourth Department, December 3, 1924.

Railroads — accident at crossing — action to recover for death of plaintiff's intestate who was killed in collision between defendant's train and motorcycle — intestate was riding in side car of motorcycle — intestate not guilty of contributory negligence as matter of law — view of driver of motorcycle was somewhat obstructed — evidence shows that signals were given by engineer — verdict in favor of plaintiff against evidence — verdict of $12,000 excessive.

In an action to recover for the death of plaintiff's intestate, who was killed at a railroad crossing in a collision between one of defendant's trains and a motorcycle, the intestate was not guilty of contributory negligence as matter of law,

since it appears that she was riding in the side car of the motorcycle and that her view was somewhat obstructed.

The verdict in favor of the plaintiff is against the weight of the evidence on the question of defendant's negligence, since it appears that while the view of the plaintiff's sole witness who was operating the car in which decedent was riding was somewhat obstructed as he approached the crossing, he had a clear view of the track for at least forty feet before he reached the point of collision, and that while he testified that he did not hear any signals given by the engineer, there is strong evidence by several witnesses that the bell on the locomotive was ringing all the time and that the engineer sounded the locomotive whistle as he approached the crossing and slackened the speed of the train.

Furthermore, the verdict for $12,000 was excessive.

APPEAL by the defendant, Lehigh Valley Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 16th day of May, 1924, upon the verdict of a jury for $12,000, and also from an order entered in said clerk's office on the 22d day of May, 1924, denying the defendant's motion for a new trial made upon the minutes.

*Kenefick, Cooke, Mitchell & Bass* [*Thomas R. Wheeler* of counsel], for the appellant.

*Hamilton Ward* [*Dana L. Spring* of counsel], for the respondent.

DAVIS, J.:

On July 8, 1923, plaintiff's intestate was riding as a passenger in the sidecar of a motorcycle operated by her brother-in-law, John S. Crocker. At the railroad crossing of the highway known as the " Ellicott Creek road " there was a collision between the motorcycle and a passenger train of defendant, whereby Mrs. Wilhelm was killed. The trial resulted in a verdict for the plaintiff.

The railroad was located on an embankment and the highway approached it on either side at a slight grade. As the motorcycle approached the crossing, the view of the track in both directions was more or less obstructed by trees and bushes, and perhaps by other objects.

Defendant claims on this appeal that the decedent was guilty of contributory negligence as a matter of law under the rule as to the exercise of ordinary care stated in *LaGoy* v. *Director-General of Railroads* (231 N. Y. 191). We think, under the circumstances, considering the position in which decedent was riding in this low sidecar, and the nature and extent of the obstructions, that her contributory negligence was a fair question for the jury, particularly in view of the fact that the burden was on the defendant to establish such contributory negligence.

It is also urged by appellant that the verdict was against the weight of evidence on the question of defendant's negligence.

The question at issue was whether or not adequate signals were given. On this question the only witness for plaintiff was Mr. Crocker, the driver of the motorcycle. It is evident that he was not acutely attentive either to the approach of the train or the signals which it is alleged were given. He neither saw nor heard the approaching train until it was practically upon him, although from his position it appears he had a clear view of the track for at least forty feet before he had reached the point of collision. No doubt, as it is claimed, his attention was given to the control and guidance of his machine, and to watching for vehicles which might be coming from the far side of the grade up which he was going when approaching the tracks. Crocker says he did not hear the train though he was listening.

There is little if any dispute that the bell was ringing all the time. Evidence that there was the usual crossing whistle, so sharp and loud that it was heard on the highway and by those in the cars, is given by eleven witnesses, one disinterested and the others defendant's employees and their wives who were riding on the train. Some of this testimony is of a different nature from that called by respondent's counsel " stereotyped answers " given by employees who base their testimony upon the usual custom. In this instance the train was approaching a railroad crossing of the New York Central tracks a short distance beyond this highway crossing. It was necessary for the train to slow down and to come to a stop if the signal at the crossing was at danger. The conductor said he had this fact in mind and was alert, listening and watching to see if his engineer performed his duty. It is reasonably clear that the brakes had been applied and the speed of the train lessened. Other witnesses testifying to hearing the whistle signal, say that they did not note the ringing of the bell, although there is little doubt that it was ringing. This would indicate an attitude of fairness. The testimony of other employees creates a less favorable impression. On the whole, however, the witnesses were credible and the evidence is strongly persuasive that whistle signals were in fact given and could have been heard at the highway.

The weight of evidence does not, of course, depend upon a disparity in the number of witnesses called by the respective parties. But when witnesses appear credible and their testimony is of such a character as to render their statements highly probable, and the great preponderance in the evidence is against the facts necessarily found by the verdict, it is the duty of the court in exercising its

independent judgment, to set aside the verdict. (*Kaare* v. *Troy Steel & Iron Co.,* 139 N. Y. 369, 377; *Trotcky* v. *Forty-second St., etc., R. R. Co.,* 73 Hun, 26.)

The amount of the verdict, which we regard greatly excessive, would indicate that the jurors did not give that careful consideration to the evidence required to reach a correct conclusion; and that they must have acted hastily, influenced by their sympathies.

In determining whether a verdict should be set aside as against the weight of evidence, there is no rule that may be uniformly applied. Each case must be decided upon its own peculiar facts. For the reasons heretofore stated, we are of opinion that in this case a new trial must be granted. The negligence of the defendant is, under the circumstances, a question of fact; and it may be that on a new trial other evidence will be given and plaintiff can succeed. (*Mackenzie* v. *Augimeri,* 210 App. Div. 156, 159; *Howells* v. *Hettrick,* 160 N. Y. 308.)

The judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

HUBBS, P. J., CLARK, CROUCH and TAYLOR, JJ., concur.

Judgment and order reversed on the facts and a new trial granted, with costs to appellant to abide event.